The STATE of Texas, Appellant,

v.

William Roger SLEDGE, Paula S. Martin, and Susan A. Kasper, Appellees.

No. 01–00–00372–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 28, 2000.

Rehearing Overruled Jan. 19, 2001.

*See also* 879 S.W.2d 125.

Kristina Weber Silcocks, John Cornyn, William "Rick" Thompson, Austin, for Appellant.

Richard L. McElya, James W. Bradford, Jr., Angleton, for Appellee.

Panel consists of Justices O'CONNOR, HEDGES, and FRANK C. PRICE.*

## OPINION

O'CONNOR, Justice.

This is an interlocutory appeal arising from the trial court's denial of the State of Texas's plea to the jurisdiction asserting sovereign immunity from suit against a counterclaim[1] filed by William L. Sledge[2] for damages for "pre-condemnation taking." Reduced to its simplest terms, the issue is whether the State of Texas can be sued for actions of the United States Army Corps of Engineers that damaged land belonging to Sledge. We hold it cannot, and reverse and render judgment for the State.

## Background

In 1968, Sledge purchased four acres of land along the Gulf Intracoastal Waterway in Brazoria County at a sheriff's sale for $1,000. Since about 1939, the United States Army Corps of Engineers had intermittently deposited dredged material from the waterway on the land. As a result of those deposits, the four acres became 16 acres by accretion.

In 1989, the State petitioned to condemn Sledge's property. The State assumed Sledge had legal title to the four acres "together with accretions," for a total of 16.451 acres. The commission awarded Sledge $76,436 for the property. The State filed objections and appealed the award to the county court at law. In county court, Sledge filed a counterclaim against the State seeking damages for the dredging activity conducted on his property by the Corps between 1978 and 1989. In response, the State filed a plea to the jurisdiction asserting sovereign immunity from suit against any counterclaim for damages for pre-condemnation trespass by the Corps.

In response to Sledge's counterclaim, the State reassessed its earlier assumption that Sledge owned the entire 16.451 acres. Ultimately, the State concluded Sledge only had record title to the four acres he purchased at the sheriff's sale. Therefore, in 1990 the State filed an amended petition seeking to reduce the condemnation to the four-acre tract, and thus reduce the award. The State reasoned it should not be required to pay Sledge for the accreted land, which the State believed it owned.

In 1992, Sledge filed an amended counterclaim and a motion for frivolous claims. In his counterclaim, Sledge asked for damages as interest on the commissioners' award from 1978 to 1989, the date of the commissioners' award. The county court affirmed the commissioners' award of $79,436 for the property and severed Sledge's counterclaim from the condemnation action.

Nothing happened in Sledge's counterclaim for four years. Sometime in 1996, after the State inadvertently missed a hearing date, the county court rendered a default judgment for Sledge for $204,547.53, which included pre-judgment interest on the commissioners' award, calculated from 1978 to 1989, the date of the commissioners' award. That judgment was reversed by the Fourteenth Court of Appeals, which held the county court abused its discretion in denying the State's motion to reinstate. *State v. Sledge*, 982 S.W.2d 911, 913 (Tex.App.—Houston [14th Dist.] 1998, no pet.).

After the case was reinstated on the county court's docket, the State renewed its plea to the jurisdiction. After a hear-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The pleading refers to it as a "cross-action," but it is properly identified as a "counterclaim." Tex.R.Civ.P. 97. A cross-claim is a claim against a co-party. Tex.R.Civ.P. 97(e). Here, Sledge's action is against an opposing party. Tex R.Civ.P. 97(a).

2. William L. Sledge is deceased. William Roger Sledge, Paula S. Martin, and Susan A. Kasper are William L. Sledge's heirs.

ing, the county court denied the plea. At that hearing, Sledge stipulated he sought damages (1) in his counterclaim for pre-judgment interest on the $76,436 from 1978 to 1989, the date of the commissioners' award, and (2) additional damages in his motion for frivolous suit.

## Jurisdiction

 Immunity from suit bars an action against the State unless the State expressly consents to the suit. *Texas Dept. of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The party suing the governmental entity must establish the State's consent, which may be alleged either by reference to a statute or to express legislative permission. *See Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 814 (Tex.1970). A trial court does not have subject matter jurisdiction over a suit against the State unless the State has consented to suit. *See Federal Sign v. Texas So. Univ.,* 951 S.W.2d 401, 403 (Tex.1997); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). The State contests a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Jones,* 8 S.W.3d at 638.

 The purpose of a plea to the jurisdiction is to defeat a cause of action based on lack of jurisdiction, without regard to the merits of the claim. *Bland ISD v. Blue,* 34 S.W.3d 547 (Tex.2000) In a plea to the jurisdiction, a defendant contends that, even if all the allegations in a plaintiff's pleadings are true, there is an incurable jurisdictional defect that prevents the court from hearing the case on the merits. *Id.* at 553. To determine whether the court has jurisdiction, the court is not required to look solely at the pleadings, but may consider evidence to prove the jurisdictional facts. *Id.* at 554. A plea to the jurisdiction can be resolved

by considering evidence on issues that are "primarily jurisdictional." *Id.*

In this case, the State pursued the issue of jurisdiction in both a plea to the jurisdiction and a motion for summary judgment. The record in this case is voluminous (2,738 pages), and consists of evidence in the form of affidavits, evidence received at hearings, exhibits, and a stipulation by Sledge.

## A. Counterclaim for Damages

In issue one, the State argues the county court should have granted its plea to the jurisdiction based on sovereign immunity.

Sledge's claim for pre-judgment interest on the commissioners' award is based on pre-condemnation dredging activity conducted by the Corps of Engineers, not by the State. The issue is whether the State is vicariously liable for the dredging activities conducted by the Corps of Engineers on land later condemned by the State.

In his brief, Sledge claims that by filing the condemnation suit, the State waived sovereign immunity from suit for the condemnation action and all of the relief provided by Property Code chapter 21, "Eminent Domain," which, he contends, includes "pre-judgment interest for pre-condemnation entry." The State acknowledges the Texas Constitution waives immunity for condemnation proceedings. TEX. CONST. ART. 1, § 17. Notwithstanding that waiver, the State contends Sledge has no claim for pre-judgment interest for pre-condemnation entry. As part of its argument, the State suggests Sledge's claim is actually for inverse condemnation, to which Sledge is not entitled, or for pre-condemnation trespass, an intentional tort excluded from the waiver of immunity in the Texas Tort Claims Act.[3]

---

3. Although Sledge claims in part A of his brief that his petition does not allege an inverse condemnation claim, in part B of his brief he argues he properly pled a takings claim. A

"takings claim" is a shorthand reference to an inverse condemnation claim; "taking" is one element of an inverse condemnation action.

### 1. Pre-judgment interest for pre-condemnation entry

■ Sledge contends his claim for pre-condemnation injury permits him to recover pre-judgment interest for pre-condemnation entry. He argues his suit is authorized by Property Code chapter 21, "Eminent Domain." which governs all issues relating to condemnation. Sledge does not identify any particular section in Chapter 21 that authorizes pre-judgment interest for pre-condemnation injury.

For authority, Sledge points us to case law, citing three cases, *Hartford Steam Boiler Inspec. & Ins. Co. v. State*, 729 S.W.2d 372 (Tex.App.—Austin 1987, writ ref'd n.r.e.), *City of Waco v. Texas Coffin Co.*, 472 S.W.2d 800 (Tex.App.—Waco 1971, writ ref'd n.r.e.), and *City of Sweetwater v. McEntyre*, 232 S.W.2d 434 (Tex. App.—Eastland 1950, writ ref'd n.r.e.). None of the cases supports his argument that he is entitled to sue the State to recover pre-judgment interest for pre-condemnation injury.[4]

■ The issue that none of the cases cited by Sledge addresses, is whether the State waived immunity from suit for Sledge's claim. Both parties agree the State has no immunity from suit for the condemnation suit and any related claims. Sledge claims that, because the State's immunity from suit is waived for a con-demnation claim, he does not have a problem of immunity from suit for his claim. The question, in simple terms, is whether a party can use the waiver of immunity from suit for claim A, to sue the State for claim B? The answer is no. A party who sues the State must have an independent waiver of immunity from suit for each claim in the suit.

Here, Sledge cannot argue that his claim against the State is so closely related to the condemnation action that the waiver of suit for the condemnation action applies to his claim, and at the same time argue his claim is sufficiently different from the condemnation action to be a separate claim. The only damages to which Sledge was entitled for the taking of his land were those he received in the condemnation action.

Sledge's proposal for calculating "pre-judgment interest" betrays his goal, which is to recover additional compensation for the condemnation of his property, not interest on the condemnation award. By Sledge's calculations, he should recover pre-judgment interest on the commissioners' court award made in 1989 (not 1978) and retroactively calculate 10% from 1989 back to 1978. If Sledge had a legitimate claim for pre-judgment interest, it would have been calculated from 1978 and incorporated into the award, not calculated

---

4. In *Hartford Steam,* the plaintiff sued the State to recover excess taxes and pre-judgment interest. *Hartford Steam,* 729 S.W.2d at 375–76. The plaintiff had obtained the Legislature's permission to sue the State, and the opinion involved interpreting that document. Nothing in the opinion supports Sledge's claim: *Hartford Steam* did not involve condemnation of property, and this case does not involve the interpretation of a legislative consent to sue.

In *Texas Coffin,* the landowner sued the city for diminishment of value of its real property resulting from the city's construction of a viaduct. On appeal, the city complained about the date the trial court used to begin the computation of pre-judgment interest. The court held the trial court used the correct date, the date the construction began, which was the date the city blocked access to the property with its construction. *Texas Coffin,* 472 S.W.2d at 804.

In *McEntyre,* the landowner sued the city to recover damages to her property by lowering the grade in front of the property. On appeal, the city complained about the date the trial court used to begin the computation of pre-judgment interest. The court held the trial court used the correct date, the date the grade was lowered, which was the date the city blocked access to the property with its construction. *McEntyre,* 232 S.W.2d at 437–38. Nothing in *Texas Coffin* or *McEntyre* supports Sledge's claim for pre-condemnation damages. Neither *Texas Coffin* nor *McEntyre* was a condemnation case, and jurisdiction was not contested in either case; in both cases the only issue involved the beginning date for pre-judgment interest.

backwards and awarded in addition to the final award.

Sledge's claim for pre-judgment interest is a claim for damages outside the condemnation proceedings for which Sledge has not provided authority to show the State waived its immunity from suit.

### 2. "Takings" claim

Sledge contends he has a valid "takings" (inverse condemnation) claim against the State for the acts of the Corps when it deposited dredged material on his property. Sledge contends the State vicariously (through the Corps) appropriated his property in 1978, but did not pay compensation for his property until the institution of the condemnation action in 1989. The State contends Sledge did not allege a proper takings claim against the State.

 To recover for inverse condemnation, Sledge must allege (1) the State intentionally performed acts in the exercise of its lawful authority, (2) that resulted in a taking of property, (3) for public use. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex.App.— Houston [1st Dist.] 1992, writ denied). We focus on the first element-whether the State has waived immunity from suit for the intentional acts of the Corps in inverse condemnation suits.

Sledge does not allege the State or its employees intentionally committed any act relating to damage to his property. Sledge acknowledges the Corps, not the State, deposited dredged material on his land. Sledge argues the State is responsible for the dredging because the work by the Corps was done in "furtherance of the public purpose for which the State acquired the land." Sledge relies on the Texas Coastal Waterway Act of 1975 to support his argument that the State is responsible for the Corps's injury to his property. *See former* Tex.Rev.Civ.Stat. § 5415e–2 (the Waterway Act, codified as

amended at Tex. Transp. Code §§ 51.001–51.011).

To understand Sledge's theory of waiver of immunity from suit, it is necessary to discuss the Waterway Act and the Local Sponsor Agreement between Texas and the United States. In 1975, the Texas Legislature enacted the Waterway Act, which authorized the State to function as a non-federal sponsor by executing a Local Sponsorship Agreement with the United States government. *See former* Tex.Rev. Civ.Stat. § 5415e–2. The United States provided the State with a Local Sponsorship Agreement that required the State to agree to indemnify and hold the United States harmless for any liability resulting from Corps activity. Under the Texas Constitution, the State could not agree to the indemnification provision. *See* Tex. Const. art. 3, §§ 49–50 ("No debt shall be created by or on behalf of the State. . . .") In 1983, after much political wrangling, the United States finally agreed to amend the indemnity clause, relieving the State from the requirement of indemnifying the United States. Only then did the State execute the local sponsorship contract with the United States.

Nothing in the Waterway Act or the Local Sponsorship Agreement between Texas and the United States provides that the State can be sued for the acts of the United States Corps of Army Engineers. *See former* Tex.Rev.Civ.Stat. § 5415e–2. Even if the State had signed the original agreement, which required it to indemnify the United States, that contract would not have waived the State's immunity from suit in this case. Under the original agreement, Sledge might have been able to sue the United States, which could have then sought indemnification from the State.

Sledge has not cited any statute by which the State waived immunity from suit for the acts of the United States Corps of Engineers. Nothing in the Texas Torts Claim Act would authorize a suit against the State for the intentional acts of the

Corps. We find the trial court erred in denying the State's plea to the jurisdiction.

We sustain issue one.

### B. Motion for Frivolous Claim

 In issue two, the State argues Sledge's motion for frivolous claim is barred by the State's immunity from suit. The motion for frivolous claim was filed in response to the State's third amended petition in county court, cause number 16,-698B, which was the State's appeal of the commissioners' award. That motion alleges the State's conduct, in filing the third amended petition, was unconscionable, arbitrary, and capricious and violated Civil Practice and Remedies Code section 105.003.

On June 16, 1992, the trial court dismissed the State's suit. In part, the order stated as follows:

> The Court further finds that having struck [the State's] pleadings, filed after entry of the Commissioners' Award, there remains only [Sledge's] Second Amended [Counterclaim] for consideration. It is therefore, ordered, that [Sledge's] Second Amended [Counterclaim] be severed from the above styled and numbered condemnation case and established on the docket of this Court under a new cause number [16,698B–1]. All costs of court relevant to this cause to be ruled against [the State].

By severing the counterclaim, the order dismissing the State's suit became a final judgment. *See Sledge,* 982 S.W.2d at 913. The motion for frivolous claim was part of the suit dismissed by the trial court. It was not included in the severed counterclaim. The State appealed the judgment dismissing its claims, and the Fourteenth Court of Appeals affirmed. *State v. Blackstock,* 879 S.W.2d 125 (Tex.App.—Houston [14th Dist.] 1994, writ denied).[5] Sledge

did not argue in that appeal that its motion for frivolous claims was still pending. Thus, Sledge's motion for frivolous claim is not before this Court

We dismiss issue two for want of jurisdiction.

We reverse the trial court's order denying the State's plea to the jurisdiction asserting sovereign immunity and render judgment for the State.

---

5. The *Blackstock* case was an appeal from the district court's order denying the State's petition for writ of mandamus. Through the writ of mandamus, the State requested the district court to order the county court to vacate its

judgment rendered after granting Sledge's death penalty sanctions. The district court refused to enter such an order. *Blackstock,* 879 S.W.2d at 126.