CITY OF CARROLLTON, Appellant

v.

Craig B. SINGER and Carol
G. Singer, Appellees.

No. 2–06–322–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 2, 2007.

Figari & Davenport, LLP, Don Colleluori, Lance V. Clack, Dallas, and R. Clayton Hutchins, Carrollton, for Appellant.

Thompson & Knight LLP, James B. Harris, Richard B. Phillips, Jr., Dallas, for Appellees.

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

This is an appeal from the trial court's denial of appellant the City of Carrollton's plea to the jurisdiction on governmental immunity grounds. In its sole issue, the City contends that it is entitled to immunity from the breach of contract claims brought by appellees Craig B. and Carol G. Singer. The question we must answer is whether, by contracting with the Singers to perform certain improvements in exchange for their deed of a portion of their property for the City's use as a roadway, the City entered into a settlement agreement of an eminent domain claim, thereby submitting to the trial court's jurisdiction under the Texas Constitution and the reasoning of *Texas A & M University–Kingsville v. Lawson,* 87 S.W.3d 518 (Tex.2002). We conclude that it did. We therefore affirm the trial court's denial of the City's plea to the jurisdiction.

## Background Facts

The Singers own approximately 99 acres in Carrollton at the corner of Carrollton

Parkway and Old Denton Road in Denton County. In December 2001, the City sent the Singers a letter stating,

> As you are aware, the Denton County Fresh Water Supply District 1–A is in the process of extending Windhaven Parkway (Carrollton Parkway) from FM 544 to the intersection of Old Denton Road (FM 2281). In order to do so, it is necessary to acquire a portion of your property as depicted in Exhibit A. Attached to this letter are the ROW [right of way] documents, copies of the executed interlocal contract between the city of Carrollton and the Denton County Fresh Water Supply District 1–A, a copy of the City Council agenda item memo, a copy of Addendum One to the interlocal agreement, a permission letter to enter your property for the purpose of relocating the existing fence and a permission letter to allow Co–Serve to enter your property for the purpose of relocating the existing utility poles.
>
> We are requesting that you sign the ROW documents to transfer the described property to the city of Carrollton and that you sign the permission letters to allow Co–Serve and our fence contractor to relocate the utility poles and remove the fence to allow for the construction of the roadway.
>
> . . . .
>
> *Our office has already bid the fence relocation and reconstruction project and anticipates awarding the bid on January 8, 2002.* . . .

[Emphasis added.]

The Singers rejected the City's initial offer, but after negotiating further, they reached an agreement with the City: in exchange for the Singers' conveyance of the right of way needed for extension of the road, the City would construct a new entrance from Carrollton Parkway that would be equivalent in "materials, dimension[,] and appearance" to the Singers' existing entrance on Old Denton Road, and the City would also reimburse the Singers up to $10,000 for "professional service work" in connection with the project.[1] The Singers allege that the City also specifically agreed not to close the median cut on Old Denton Road until the new entrance from Carrollton Parkway had been completed.

The Singers conveyed the land to the City. The deed contained the following language:

> By accepting this deed, Grantee [the City] acknowledges that the Land is valued at $165,000 per acre.
>
> The Land is being deeded for the construction of the street as placed and shown in the survey dated December 19, 2001. . . . If the street is not constructed as shown . . . then this deed becomes void abinitio [sic] and the Land reverts back to Grantors."[2]

Although the City extended Carrollton Parkway and constructed a new entrance from it as promised, the Singers were not satisfied with the quality and appearance of the new entrance. In addition, the City closed the median cut from Old Denton Road before the new entrance from Car-

---

1. No one document evidences the agreement between the parties, but the City filed and recorded the deeds attached to the Singers' letter outlining their understanding of the agreement. The City also expressly confirmed its agreement to construct the new entrance and reimburse the Singers up to $10,000 in a subsequent letter.

2. A contemporaneously executed Slope Easement, which was for the purpose of constructing and maintaining embankments to the road extension, contained substantially similar language.

rollton Parkway was complete.[3]

The Singers sued the City for money damages and attorneys' fees. The Singers alleged that the City breached the parties' agreement in several respects. First, the Singers alleged that the City failed to construct the new Carrollton Parkway entrance in accordance with the parties' agreement. Specifically, the Singers alleged that the City failed to (1) provide landscaping and lighting identical to the landscaping and lighting of the old entrance, (2) place a "No Trespassing Private Drive" sign adjacent to the new gate, (3) properly install electricity at the new entrance, (4) install an exit sensor for the new gate, and (5) install a sign instructing visitors how to gain access to the property. The Singers also alleged that the City failed to complete a new fence and failed to install a sprinkler system. The Singers further complained about the City's premature closing of the Old Denton Road entrance.

The Singers initially pled that the City was not immune from suit under section 51.075 of the local government code, which provides that a municipality may "plead and be impleaded." TEX. LOC. GOV'T CODE ANN. § 51.075 (Vernon 1999). The City filed a plea to the jurisdiction; the parties agreed to abate the case pending the supreme court's determination of the same issue in *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex.2006). When the supreme court held that section 51.075 alone does not waive a city's immunity from suit, *id.* at 342–43, the Singers amended their petition, asserting that the City did not have immunity from suit under the Texas Constitution and *A & M* because its contract with the Singers was, in essence, a settlement agreement of an eminent do-

main claim. The trial court agreed and denied the City's plea after a hearing. The City filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006).

## Immunity and Jurisdiction

■ Governmental immunity defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004); *Tex. Dep't of Transp. v. Andrews*, 155 S.W.3d 351, 355–56 (Tex. App.-Fort Worth 2004, pet. denied). The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Miranda*, 133 S.W.3d at 226.

■ We review the trial court's ruling on a plea to the jurisdiction based on immunity from suit under a de novo standard of review. *Id.* at 225–26, 228; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Andrews*, 155 S.W.3d at 355–56. Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, or whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction, is a question of law. *Miranda*, 133 S.W.3d at 226. Here, the nature of appellants' claims is not disputed; rather, it is the legal effect of those claims that is disputed. Thus, we determine as a matter of law whether the alleged facts establish jurisdiction.

■ When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction

---

3. The City has not disputed this allegation in the Singers' pleadings; we adopt it as true for purposes of reviewing the plea to the jurisdic-

tion. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

to hear the cause. *Id.; Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 227–28. However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 228.

### Applicable Law

 Governmental immunity protects governmental entities from lawsuits for damages absent legislative consent. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997); *Serv. Employment Redevelopment v. Fort Worth ISD*, 163 S.W.3d 142, 149 (Tex.App.-Fort Worth 2005, pet. filed). The doctrine of governmental immunity encompasses two distinct concepts: (1) immunity from suit (barring a lawsuit unless the legislature expressly gives its consent to suit) and (2) immunity from liability (even if the legislature has expressly given its consent to the suit). *See Fed. Sign*, 951 S.W.2d at 405; *Serv. Em-*

*ployment*, 163 S.W.3d at 149. "Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction." *Miranda*, 133 S.W.3d at 224.

 Although a governmental entity waives immunity from liability when it contracts with private citizens, its immunity from suit is not waived by its merely entering into a contract. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex.2003); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). Express legislative consent is required to show that immunity from a breach of contract suit has been waived. *See Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002); *Serv. Employment*, 163 S.W.3d at 149. Consent to suit must be expressed by clear and unambiguous language. TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2006); *Pelzel*, 77 S.W.3d at 248.

Here, the Singers do not identify any statute as waiving the City's immunity from suit for breach of its contract with the Singers.[4] Accordingly, relying on the Texas Constitution and *A & M*, the Singers contend that the City is not immune from suit in this instance because the agreement between the parties was, in essence, a settlement of an eminent domain claim, for which the City has no immunity by virtue of the Texas Constitution.[5]

---

4. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (waiving local governmental entity's sovereign immunity from suit for breach of "contract subject to this subchapter"), § 271.151(2) (defining "[c]ontract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity") (Vernon 2005) (both effective September 1, 2005). Because the Singers have never alleged that section 271.152 waives the City's immunity in

this case, we express no opinion regarding its applicability. *See, e.g., Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (stating well-established rule requiring pleader to allege facts affirmatively demonstrating the trial court's jurisdiction); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 407 (Tex.App.-Fort Worth 2006, pet. denied).

5. The Singers do not claim that the City waived immunity from suit simply by contracting with them; rather, they contend that the City was never immune from suit for their

### Texas A & M University–Kingsville v. Lawson

In *A & M,* the Texas Supreme Court held that a government entity that agrees to settle a claim for which it is not immune is not later entitled to immunity from suit in an action alleging a breach of the settlement agreement. *A & M,* 87 S.W.3d at 518. Lawson, a professor at the University, sued the University after it terminated his employment, claiming violations of the Whistleblower Act; violations of his constitutional rights to freedom of association, expression, petition, and privacy; and interference with business relations. *Id.* at 518–19. The trial court granted the University's plea to the jurisdiction on all claims except the Whistleblower Act claim; Lawson then agreed to release his claims and dismiss the case with prejudice in exchange for $62,000. *Id.* at 519. The settlement agreement also provided that the University would respond to employment inquiries about Lawson in a specified manner. *Id.*

Lawson later filed a suit against the University alleging breach of the settlement agreement for failure to respond to employment inquiries in accordance with the settlement agreement. *Id.* The University filed a plea to the jurisdiction, which the trial court denied. *Id.* On appeal, the University contended, in part, that it was immune from the second suit because there is no waiver of sovereign immunity for breach of contract. *Id.*

The supreme court held that

> when a governmental entity is *exposed to suit* because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued. The government can-

not recover waived immunity by settling without defeating the purpose of the waiver in the first place. Such a rule would limit settlement agreements with the government to those fully performed before dismissal of the lawsuit because any executory provision could not thereafter be enforced.

> . . . .

> . . . Once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision.

*Id.* at 521–22 (emphasis added). Thus, the court determined that a governmental entity that has been *exposed to a claim* for which liability from suit has been waived cannot regain that immunity by entering into a settlement of that claim. In other words, once a governmental entity's immunity from suit has been waived as to a claim, it is waived for all purposes until the ultimate resolution of that claim. The focus on *Lawson* therefore is the *type* of claim settled by the entity.

### Eminent Domain

■■■■■ Article I, section 17 of the Texas Constitution provides that

> [n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money.

Tex. Const. art. I, § 17. This provision does not grant power to the government but limits the inherent sovereign power of eminent domain by imposing the require-

claims and could not create immunity by contracting with them to purchase the property instead of instituting eminent domain proceedings. *See A & M,* 87 S.W.3d at 521–22;

*cf. Gen. Servs. Comm'n,* 39 S.W.3d at 594 ("[T]he State does not waive immunity from suit simply by contracting with a private person.").

ments that the government take property only for "public use" and pay "adequate compensation" when doing so. *Id.; McInnis v. Brown County Water Improvement Dist. No. 1*, 41 S.W.2d 741, 744 (Tex.Civ. App.-Austin 1931, writ ref'd); *Whittington v. City of Austin*, 174 S.W.3d 889, 896 (Tex.App.-Austin 2005, pet. denied). " 'Eminent domain' refers to '[t]he power to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power.' " *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 456 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (quoting BLACK'S LAW DICTIONARY 523 (6th ed.1990)).

A municipality may exercise the right of eminent domain to acquire property for the purpose of "extending ... any alley, street or other roadway." TEX. LOC. GOV'T CODE ANN. § 251.001(a)(4) (Vernon 2005). A municipality exercises the power of eminent domain by the process known as condemnation. *City of Houston v. Boyle*, 148 S.W.3d 171, 178 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Condemnation is a process created entirely by statute. *Duncan v. Calhoun County Navigation Dist.*, 28 S.W.3d 707, 709 (Tex. App.-Corpus Christi 2000, pet. denied); *see* TEX. PROP.CODE ANN. §§ 21.011–.065 (Vernon 2000, 2004 & Supp.2006). It is the procedure by which a sovereign exercises its right to take property of a private owner for public use, without consent, upon the payment of just compensation. *Boyle*, 148 S.W.3d at 178; *Duncan*, 28 S.W.3d at 709; *A.C. Aukerman Co. v. State*, 902 S.W.2d 576, 577 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

The property code describes the procedure for instituting an eminent domain proceeding in Texas. Section 21.012(a) provides that "[i]f ... a political subdivision of this state ... wants to acquire real property for public use *but is unable to agree with the owner of the property on the amount of damages*, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court." TEX. PROP.CODE ANN. § 21.012(a) (Vernon 2004) (emphasis added). In other words, a genuine effort to purchase the land by agreement between the parties, and the failure to do so, is a condition precedent to instituting eminent domain proceedings. *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 842–43 (S.D.Tex.1999), *aff'd*, 234 F.3d 28, 2000 WL 1568171 (5th Cir.2000).[6] Generally, the government compensates the owner before appropriating property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex.1992).

If the owner and municipality cannot agree on the amount of adequate compensation, the municipality begins condemnation proceedings by filing a petition describing the property to be condemned, stating the purpose for which the municipality intends to use the property, stating the name of the owner of the property if the owner is known, and stating that the municipality and the property owner are unable to agree on the damages. TEX. PROP.CODE ANN. § 21.012; *see Duncan*, 28 S.W.3d at 709. The trial court then appoints three special commissioners who assess damages, i.e., their opinion of the

---

6. Although we are not bound by federal authority, we may rely on it as persuasive. *Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex.1992) (orig.proceeding); *Westchester Fire Ins. Co. v.* *Admiral Ins. Co.*, 152 S.W.3d 172, 183 (Tex. App.-Fort Worth 2004, pet. filed) (op. on reh'g).

value of the land; they do not decide whether the municipality has the right to condemn the property in the first place. TEX. PROP.CODE ANN. § 21.014(a) (Vernon 2004), § 21.042 (Vernon Supp.2006); *Duncan,* 28 S.W.3d at 709.

■ Either the municipality or the owner may object to the special commissioners' award. TEX. PROP.CODE ANN. § 21.018(a) (Vernon 2004). Upon the filing of such objections, the award is vacated and the parties may "try the case in the same manner as other civil causes" in the court in which the municipality filed its original petition for condemnation. *Id.* § 21.018(b); *Duncan,* 28 S.W.3d at 709. The municipality must prove that all of the requirements of the condemnation statute have been satisfied and that it is required to take the property by eminent domain; the owner has the burden of proving the amount of adequate compensation. *Religious of the Sacred Heart of Tex. v. City of Houston,* 836 S.W.2d 606, 613 (Tex.1992); *Duncan,* 28 S.W.3d at 709.

■ An agreement to convey property to a governmental authority for a public purpose has the same effect as a formal condemnation proceeding. *See State v. Brewer,* 141 Tex. 1, 169 S.W.2d 468, 471 (1943) ("The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation proceedings."); *Howard v. County of Nolan,* 319 S.W.2d 947, 950 (Tex.Civ.App.-Eastland 1959, no writ).[7] "[W]henever the owner accepts a sum of money as compensation for land for such a use, his property, to the extent of the taking, is expropriated

to the use of the public." *Howard,* 319 S.W.2d at 950. When property is acquired by agreement and there is no commissioner's award as a result of condemnation proceedings, a taking (i.e., a completed appropriation for public use) occurs upon the payment's being made and accepted by the landowner. *Howard,* 319 S.W.2d at 950; *see Benefit Realty Corp. v. City of Carrollton,* 141 S.W.3d 346, 349–51 (Tex. App.-Dallas 2004, pet. denied) (holding that church's conveyance of property to City was involuntary when City did not initiate condemnation proceedings against church but instead "passed a resolution authorizing the City to acquire all parcels of land necessary to make public improvements to Hebron Parkway by making an offer for the fair market value of the parcels or, if negotiations with the owners failed, to institute eminent domain proceedings"). A completed appropriation for public use may also be effectuated upon the actual passage of title to the governmental entity. *Weingarten,* 66 F.Supp.2d at 844; *see Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex.1980) ("Property that is taken is transferred from one owner to another.").

## Analysis

■ In their first amended petition, the Singers pled that

[the] court has jurisdiction over this case because governmental immunity does not protect the [C]ity. By entering into the settlement agreement/contract, the City waived immunity from liability. The settlement agreement/contract at issue was to settle an eminent domain case, for which the City did not have

---

7. In *Brewer* and *Howard,* the landowners obtained consent to sue pursuant to legislative resolutions. *Brewer,* 169 S.W.2d at 468; *Howard,* 319 S.W.2d at 948. In those cases, however, the landowners were not suing to recover compensation due under the agree-

ment to convey their land to the government; instead, they were suing in tort to recover for damages to their remaining property due to the subsequent construction on the land conveyed to the government. *Brewer,* 169 S.W.2d at 468; *Howard,* 319 S.W.2d at 948.

immunity. Under the Texas Supreme Court's decision in [*A & M*], the City cannot claim immunity from suit on an agreement to resolve an action for which no immunity exists.

In furtherance of this contention, the Singers pled that their agreement with the City was intended to settle the Singers' claim for adequate compensation for the City's acquisition of their property for a public purpose. The pleadings also allege that Mr. Singer understood that the City would acquire the property by eminent domain if necessary. They characterize the City's initial offer as an "offer to avoid eminent domain." They also describe the Singers' counteroffer as an offer to "donate the requested land" in exchange for the improvements.

It is clear that, even though the City had not yet instituted condemnation proceedings against the Singers in court, it intentionally acquired the Singers' land for the public purpose of extending a road,[8] for which a municipality is statutorily authorized to institute condemnation proceedings, Tex. Loc. Gov't Code Ann. § 251.001(a)(4), and it had performed a condition precedent to instituting eminent domain proceedings in court—negotiating with the Singers for adequate compensation. The City and the Singers had even already agreed on a per acre value of $165,000, as would be done in a condemnation suit. Although the City's first letter to the Singers assumes that they would voluntarily convey the property, it also makes it clear that the project of extending the road was already well under way. Mr. Singer thought that if the Singers were not able to negotiate an agreement with the City, the City would institute condemnation proceedings to acquire the land. Thus, if the Singers had not reached a settlement agreement with the City, the City would have had to institute eminent domain proceedings against them to acquire the land.

The focus of an eminent domain proceeding—the amount of compensation the Singers would be entitled to in exchange for the City's acquisition of their property—was also the focus of the Singers' negotiations with the City. In lieu of forcing the City to institute condemnation proceedings, in which the Singers would have a claim against the City for market value of the land (recited in the deed to be $165,000 per acre) and for which the City would not be immune,[9] the Singers entered into a settlement agreement with the City under which the City would make improvements to the Singers' remaining property according to an agreed upon standard, reimburse the Singers up to $10,000 cash, and keep the then-existing entrance open until the new entrance was built. Thus, as in *A & M*, the City—a governmental entity—and the landowners settled a claim or suit for which the governmental entity's

8. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a)(3), (b)-(c) (Vernon 2005). We note that if the City had attempted to argue that it acquired the property for any purpose other than a public purpose, its actions could be considered proprietary, for which its immunity from suit is waived. *See City of Weslaco v. Borne*, 210 S.W.3d 782, 790 (Tex.App.-Corpus Christi 2006, pet. denied) (op. on reh'g) (citing *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex.1986)); *see also Tooke*, 197 S.W.3d at 343–44 (noting that the supreme court has "never held that this same distinction [between governmental and proprietary functions] determines whether immunity from suit is waived for breach of contract claims," as opposed to tort claims, but determining that it did not need to decide the issue because the city in that case was engaging in a governmental function).

9. *See* Tex. Prop.Code Ann. § 21.018(b); *Duncan*, 28 S.W.3d at 709; *State v. Sledge*, 36 S.W.3d 152, 156 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *see also* Tex. Const. art. I, § 17.

immunity is waived; thus, enforcement of that settlement necessarily is included within that initial waiver. *A & M*, 87 S.W.3d at 521. Obviously, the dissent's bold conclusion that *A & M* does not apply is wrong—the City exposed itself to liability and suit by its threat of eminent domain proceedings, and its agreement to compensate the Singers for their property settled a claim already asserted by the City against the Singers. *See* Dissenting Op. at 801.

We conclude that the City could not *create* immunity from suit for the Singers' claim for adequate compensation by contracting to purchase their property at an agreed upon valuation in fulfillment of the condition precedent to filing an eminent domain proceeding in court as set forth in the property code. *See A & M*, 87 S.W.3d at 522–23; *see also* TEX. PROP.CODE ANN. § 21.012(a). Accordingly, we hold that the agreement between the City and the Singers was a settlement of an eminent domain proceeding in which the Singers would have a claim against the City for adequate compensation for the City's acquisition of their property, and for which the City would not be immune. *See* TEX. CONST. art. I, § 17; *A & M*, 87 S.W.3d at 521. Therefore, the City is likewise not immune to this subsequent action by the Singers for breach of that settlement agreement. *See A & M*, 87 S.W.3d at 521.

The dissent argues that because the Singers voluntarily entered into an agreement with the City, they should not be allowed to now assert that the City has taken or attempted to take their property by eminent domain. *See* Dissenting Op. at 803. But the dissent fails to recognize that the only way the City could *avoid* such a claim was by settling with the Singers for adequate compensation *before* instituting an eminent domain proceeding. Were we to hold that the City's actions shielded it from immunity from suit (thereby ignoring the supreme court's holding and logic in *A & M* ), the City would be able to avoid paying compensation for property altogether by entering into agreements with property owners without ever intending to pay the promised compensation and yet still be shielded from suit. Here, the City exposed itself to this claim by determining to obtain the Singers' land for the public purpose of extending a road and by negotiating with the Singers for an appropriate amount of damages under section 21.012(a) of the property code. *See* TEX. PROP.CODE ANN. § 21.012(a). Accordingly, we disagree with the dissent's characterization of the Singers' agreement with the City as a mere contract between citizens and a government entity rather than a settlement agreement of a claim for which the City would not be immune from suit in the first place. *See* Dissenting Op. at 803.

We overrule the City's sole issue.

## Conclusion

Having overruled the City's sole issue, we affirm the trial court's denial of the City's plea to the jurisdiction.

CAYCE, C.J. filed a dissenting opinion.

JOHN CAYCE, Chief Justice, dissenting.

The majority holds that by negotiating a contract for the purchase of property a municipality waives sovereign immunity from suit for breach of the contract. The Supreme Court of Texas, however, has repeatedly rejected such judicially created waiver-by-conduct exceptions to the sovereign immunity doctrine in the contract-claims context. Because the majority's holding departs from the established jurisprudence of our state, I respectfully dissent.

The Supreme Court of Texas has held that a governmental entity by entering into a contract waives immunity from *liability* for breach of the contract but does not, merely by entering into a contract, waive immunity from *suit*.[1] The supreme court has also rejected the view that immunity from suit is waived merely by accepting the benefits of a contract.[2] The majority's holding that the City has waived its immunity from suit by negotiating a contract with the Singers for the purchase of their property is in direct conflict with these supreme court rulings and defeats many of the policies underlying the sovereign immunity doctrine.[3]

The majority's reliance on *Texas A & M University–Kingsville v. Lawson*[4] to create a waiver of immunity based on the City's contract with the Singers is misplaced. In *Lawson*, the University entered into a settlement agreement with Lawson to settle a lawsuit filed by Lawson in which he alleged claims for which the University had no immunity.[5] Lawson later sued the University for breach of the settlement agreement. In response, the University filed a plea to the jurisdiction, contending that it was immune from the breach of contract suit because there is no waiver of sovereign immunity for breach of contract.[6] The trial court denied the plea, and the court of appeals affirmed.[7]

In affirming the lower courts' denial of the University's plea to jurisdiction, the Supreme Court of Texas held,

We agree with the trial court that when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued. The government cannot recover waived immunity by settling without defeating the purpose of the waiver in the first place.... We do not think the Legislature intended by waiving the bar of immunity for claims under the Whistleblower Act that settlements would be prevented or delayed by a revival of the bar in the form of immunity from suit for breach of settlement agreements. While it is certainly true ... that a suit for breach of a settlement agreement is separate and apart from the suit on the settled claim, enforcement of a settlement of a liability for which immunity is waived should not be barred by immunity.[8]

*Lawson* clearly has no application to the facts of this case. Unlike the University in *Lawson*, the City was not exposed to suit because of a waiver of immunity when it entered into its agreement with the Singers. At the time the agreement was made, the Singers had no cognizable claim under Texas law that could be brought against the City based on their negotiations with the City, and they had not filed or threatened to file a suit alleging a claim against the City for which the City's immunity is waived.

1. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001).

2. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854–58 (Tex.2002); *Little–Tex.*, 39 S.W.3d at 594.

3. *IT–Davy*, 74 S.W.3d at 857 ("Creating a waiver-by-conduct exception [to the sovereign immunity doctrine] would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies.").

4. 87 S.W.3d 518 (Tex.2002).

5. *Id.* at 518.

6. *Id.* at 518–19.

7. *Id.*

8. *Id.* at 521.

The majority opines, however, that *Lawson* governs this case because the City exposed itself to suit by "its *threat* of eminent domain proceedings," and that the parties' agreement settled an eminent domain claim in which "the Singers *would have* a claim against the City for adequate compensation." [9] There are three obvious problems with this reasoning.

First, the City's alleged "threat" of eminent domain proceedings did not expose the City to a suit for adequate compensation because the Singers could not have sued the City based on such a threat. Under the statutes and case law discussed in the majority opinion, [10] the Singers would have had an actionable claim against the City for adequate compensation if, and only if, the City actually commenced eminent domain proceedings to take the property—which the City did not do in this case.

Second, there is no evidence that the parties intended that the agreement settle any alleged claims against the City or the Singers. In construing a contract, the primary concern of this court is to ascertain the true intention of the parties as expressed in the contract. [11] The plain and unambiguous language of the agreement in this case evidences an intent that the Singers convey their property to the City in consideration for the City's promise to make improvements to the Singers' remaining property and reimburse the Singers for out-of-pocket expenses. There is nothing in the wording of the agreement that even remotely demonstrates an intent of either party to settle an alleged eminent domain or adequate compensation claim.

Third, the Singers had no adequate compensation claim to settle when they entered into the agreement because they had already reached an agreement with the City on the amount of compensation to be paid for the property. Before initiating an eminent domain proceeding, a municipality must first attempt to purchase the property by agreement. [12] When the municipality purchases the property by agreement, there is no condemnation or "taking" of the property by the power of eminent domain. [13] In such a case, the person from whom the property was purchased has no justiciable claim for adequate compensation under the condemnation statutes or the takings clause. [14]

In the final analysis, the majority acknowledges that its purpose in construing the agreement in this case as a "settlement

---

9. Maj. Op. at 799–800 (emphasis supplied). The sovereign immunity doctrine does not shield a municipality from an action for compensation when a taking is attempted by eminent domain. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980).

10. *See* Maj. Op. at 796–99, 800 and authorities discussed therein.

11. *E.g., DeWitt County Elec. Co-op. v. Parks*, 1 S.W.3d 96, 100–01 (Tex.1999); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Boland v. Natural Gas Pipeline Co. of Am.*, 816 S.W.2d 843, 845 (Tex.App.-Fort Worth 1991, no writ).

12. TEX. PROP.CODE ANN. § 21.012(a) (Vernon 2003) (providing that "a condemning entity may begin a condemnation proceeding" if the entity "is unable to agree with the owner" on a purchase price).

13. *See Little–Tex*, 39 S.W.3d at 598–99; *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex.Civ. App.-Austin 1951, writ ref'd).

14. This does not mean that the Singers waived their right to recover adequate compensation for the property in the event the City instituted eminent domain proceedings. Had the Singers refused to voluntarily convey the property to the City and the City attempted to take the property by eminent domain, nothing in the Singers' agreement with the City would have precluded them from pursuing a claim for adequate compensation in a subsequent condemnation proceeding.

agreement" to bring it under *Lawson* is to prevent the City from accepting the benefits of the agreement while enjoying the protection of immunity.[15] As desirable as this outcome may seem, however, it is not supported by the law or the facts. The City was not exposed to suit because of a waiver of immunity when it entered the agreement, and no actionable claim for which the City could be sued because of a waiver of immunity was settled by the agreement. Thus, there is no basis for the majority's conclusion that the agreement was an attempt by the City to "create immunity" from a claim to which the City was exposed because of a waiver of immunity.

Moreover, by characterizing the agreement as settling an eminent domain claim, the majority has ignored the distinction between a municipality's power to purchase property by contract and to take property by eminent domain.[16] The evidence conclusively shows that the City was acting within a color of right under contract when it negotiated the agreement with the Singers to purchase their property and *not* under its eminent domain powers. The Singers were not forced to negotiate with the City. They could have refused to negotiate, insisted

that the City take the property, if at all, by eminent domain, and asserted a claim for adequate compensation. Having agreed to convey their property to the City voluntarily, however, the Singers should not be allowed to now assert that the City has taken or attempted to take their property against their will by eminent domain.[17]

For all of these reasons, I would sustain the City's sole issue, reverse the trial court's denial of the City's plea to the jurisdiction, and render judgment dismissing the Singers' suit against the City.

**15.** Maj. Op. at 800 ("Were we to hold that the City's actions shielded it from immunity from suit (thereby ignoring the supreme court's holding and logic in *A & M*), the City would be able to avoid paying compensation for property altogether by entering into agreements with property owners without ever intending to pay the promised compensation and yet still be shielded from suit."). *But see IT–Davy*, 74 S.W.3d at 857 ("Because we have consistently held that only the Legislature can waive sovereign immunity from suit, allowing other governmental entities to waive immunity by conduct that includes accepting benefits under a contract would be fundamentally inconsistent with our established jurisprudence.").

**16.** *Little–Tex*, 39 S.W.3d at 599; *see, e.g.*, Tex. Transp.Code Ann. § 314.011 (Vernon 1999) ("The governing body of a municipality may purchase *or* condemn property to lay out, construct, improve, or extend any highway within its boundaries."); *Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 201 (1944) (noting that governmental entities may obtain land and construction materials by private contract or condemnation proceedings); *Benefit Realty Corp. v. City of Carrollton*, 141 S.W.3d 346, 349 (Tex.App.-Dallas 2004, pet. denied) (noting that the defendant obtained the property by agreement, rather than condemnation).

**17.** *See Steck*, 236 S.W.2d at 869.