

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-09-00039-CV

_____

**CITY OF MIDLOTHIAN, TEXAS,**

                                            **Appellant**

 v.

**ECOM REAL ESTATE MANAGEMENT, INC.,**

                                            **Appellee**

_____

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 68846

_____

## DISSENTING OPINION

_____

Strip away another protection of landowners. Will they notice this time?

In a long string of events, the legislature and the courts have systematically carved away at one of the most fundamental of the rights given to the government— that private property may be taken only upon the payment of adequate/just compensation. To begin, the reader must understand that the Constitution, of both the United States and Texas, is a grant of certain powers inherently possessed by free people to the government. In those constitutions, the people granted to the government the authority to take private property for public use. But there was a fundamental protection or limitation embedded with that grant of authority. The protection is

obviously designed to limit the use of this authority. The government could only exercise the authority to take property for a public use upon giving the owner adequate compensation for the property taken. The United States Constitution phrases it as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness, against himself, nor be deprived of life, liberty, or property, without due process of law; *nor shall private property be taken for public use, without just compensation.*

U. S. CONST. amend. V (emphasis added).

> The Texas Constitution states it thusly:

> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof.

TEX. CONST. art. I, § 17.

Over the years, the terms in these two provisions have been construed by the courts of the United States of America and Texas. Additionally the legislature has expanded the list of those entities that can take property and defined the procedures by which private property can be taken. The courts' construction and the legislative acts have almost always been in favor of expanding the authority of the government or other condemning authority's right to take the property or reduce the level of compensation that had to be paid to take the property. Notwithstanding this long and

steady trend, citizens expressed both surprise and outrage when the United States Supreme Court held in *Kelo v. City of New London* that a "public use" could be to increase its tax revenue by taking underutilized property from a landowner for the purpose of selling or even donating it to a private entity for economic development purposes. *See Kelo v. City of New London*, 545 U.S. 469, 125 S. Ct. 2655, 162 L.Ed.2d 439 (2005). From a legal standpoint, this was not surprising.

For years there appears to have been a systematic erosion of the protection of landowners from their government. Hearing them first as a citizen, then as a lawyer, and now as a judge, stories abound that condemning authorities browbeat landowners into settlement agreements by threatening them with a condemnation suit. The stories generally continue as follows. The condemning authorities are quick to point out that the value of the property will be determined by citizens on the jury that understand that they will also be the persons having to pay for the property through their taxes or higher prices for commodities like gas or electricity. Fearing inadequate valuation through litigation, as well as to avoid the cost of litigation, a cost which is ignored in what the condemning authority or government must pay in compensation, the landowner settles. Sometimes the settlement agreement is not just for money. The agreement may involve any number of additional considerations such as right-of-way access by certain means or driveway entrances at certain locations, placement of specific improvements like curbs and gutters, sound barriers, and sidewalks or possibly the waiver of fees or taxes, or, as in this case, access to sewage facilities without a corresponding requirement to purchase water from the same entity.

Today the majority of this Court strips the landowner of the right to sue the governmental entity that made the settlement agreement, took title to the property under the threat of eminent domain proceedings, and then refused to fulfill its agreement to compensate the landowner. I would not. I respectfully dissent.

## THE LITERARY MAP

We will start with understanding the difference between *Kelo v. City of New London* and this case. Then I will mention the holding in *City of Carrollton v. Singer*. *City of Carrollton v. Singer*, 232 S.W.3d 790 (Tex. App.—Fort Worth 2007, pet. denied). But the reader must examine that case, both majority and dissent, because in the case we are deciding, this Court discusses it at length and decides to go with the dissent rather than the majority. I will then comment upon some of the practical problems and implications of the Court's analysis and holding as it applies to the facts of this case. Finally, I will mention a simple solution that should be utilized.

## *KELO V. CITY OF NEW LONDON* DISTINGUISHED FROM THIS CASE

The *Kelo* case involved defining a "public use." *Kelo* was about taking property from one citizen so that it can be sold or given to another citizen who will improve the property and thus increase the taxable value of the property for the benefit of the government by providing increased taxes.

Whereas this case, at its most fundamental level, is about whether a landowner can sue the government for breach of the settlement agreement for refusing to pay for what is taken. And the reader must recognize that payment can be in many forms other than money. Likewise, what is taken, or damaged by the taking, can be more than just title to real property.

In this case, the City of Midlothian was installing a wastewater collection system otherwise known as a sewage line. They determined they needed to place the line on property owned by ECOM. Rather than suffer the uncertainties of a jury determination of value of the property rights taken and damage to the remainder of the tract if the City condemned an easement across it, the parties negotiated an agreement that involved benefits other than the payment of money.

The agreement provided that ECOM would convey an easement to the City on which the sewage line could be constructed. As compensation for the easement, ECOM, who is a developer of property, would be allowed to connect to the sewage line through connections placed in the line, and thereby discharge the sewage from a defined area of property ECOM was developing, which included the area where the easement was to be located. ECOM had its own source of potable water for the persons buying property in its development. The persons in the area developed by ECOM would thus be allowed to discharge the sewage into the system at no cost and without the corresponding obligation incurred by other users of the sewage system to purchase their water from the City.

The City built the sewage line on the easement conveyed to it by ECOM and, as agreed, the constructed sewage line had stub-outs or points at which the purchasers in ECOM's development were to connect. But then the City passed an ordinance that provided that no user could discharge sewage into the City system unless they also purchased water from the City. The effect of the ordinance was to destroy the benefit to ECOM of the agreement under which it had conveyed a property right, the easement, in which the sewage line was constructed. No one contends that the use of the property

for the construction of a sewage line is not a public use. The issue in this case is whether the City can be sued for breach of the agreement.

So the issue in this case is substantially different than the issue in *Kelo*. The Court holds that the City cannot be sued for breach of the agreement. This holding is based on the determination that formal condemnation proceedings had not begun and is consistent with the dissenting opinion's analysis in *City of Carrolton v. Singer*, 232 S.W.3d 790 (Tex. App.—Fort Worth 2007, pet. denied).

*CITY OF CARROLLTON V. SINGER*

We now must move to the case relied upon by ECOM as authority for its ability to sue the City.

In *City of Carrolton v. Singer*, Singer asserted that the City of Carrolton had breached an agreement whereby Singer had agreed to convey property to the City and the City had agreed to make certain improvements to Singer's remaining property.

The issue in *Singer* was the same as the issue before this Court: Could Singer sue the City? The court in *Singer* held the City could be sued for breach of an agreement if the agreement was a settlement of an eminent domain proceeding. The facts in *Singer* are so similar to the facts in this case that the City of Midlothian concedes that if the holding in *Singer* is applied, the City cannot prevail. The City argues that *Singer* was wrongly decided and that in this proceeding we should adopt the dissenting opinion from *Singer*. The Court does, I would not.

The legal positions and arguments are fully discussed in *Singer*. They apply equally to this proceeding. I cannot add anything of real value to that analysis so I will not attempt to do so.

In both cases, the City agreed with the landowner that the City would do certain things besides the simple payment of money to obtain the property they needed. The litigation in both suits arose upon the alleged breach of the agreement. I would hold, as the court in *Singer* did, that the City can be sued by the landowner for breach of the agreement made under the threat of taking the property by eminent domain.

### PRACTICAL PROBLEMS AND IMPLEMENTATION

The most fundamental problem of the Court's holding is that ECOM's suit for inverse condemnation remains, but the questions will be what did the City take, and how will it be valued? Did the City take the easement without payment so that now the City must pay for it? Did they take it by adverse entry and construction of the sewer line or by a municipal ordinance – also known as a regulatory taking? Or did the City take ECOM's contractual rights, and how will those rights be valued? These and other issues, which are not before us in this interlocutory appeal, will plague the parties throughout the remainder of the proceeding.

Additionally, the dissent in *Singer* and the Court in this case seem to be concerned about the need for clarity. The Court states: "To say that the easement agreement settled an eminent domain claim, when it contains no language to this effect and no eminent domain proceeding was pending, further blurs the distinction between an entity's power to purchase and its power to take." Maj. Op., pg. 12 (citing Chief Justice Cayce's dissent in *Singer*).

It is precisely because the line is blurry between the right to purchase and the right to take that we should affirm the trial court's judgment to not dismiss ECOM's suit. The result in this appeal will have the adverse consequences of:

1. encouraging the parties to not agree and force litigation; and

2. preventing workouts and non-monetary modifications of projects that would otherwise benefit both the condemning authority and the landowner.

And, finally, to the extent the agreement remains wholly executory, I have no problem with the analysis of the dissent in *Singer*. But once the City takes possession of the property, or accepts title to it, the City has then exercised the threat of taking the property by eminent domain.

### A SIMPLE SOLUTION

In the winner-takes-all split between the holding in *Singer* and the holding in this proceeding, I believe the answer is in the middle. The issue is actually a question of fact: Was the agreement upon which the landowner sues made under the threat of having property taken by eminent domain? If the evidence on this question is not conclusive, there will be a fact question that must be resolved. And there is already a reasonably well developed body of law on the question of whether property is taken under the threat of eminent domain. This body of law has grown up out of the tax code because if property is taken under the threat of eminent domain, the gain from the sale/conveyance/transfer of the property may receive favorable tax treatment. *See* I.R.C. §§ 1231 and 1232 (2009).

Because I believe ECOM sufficiently pleaded allegations asserting that the agreement was made under the threat of eminent domain, and the City of Midlothian did not conclusively negate that fact at the hearing on the plea to the jurisdiction, I would hold that ECOM may sue the City of Midlothian for breach of the agreement. Alternatively, I would hold that whether the agreement was made under the threat of

taking the easement by eminent domain is an unresolved fact issue which must be decided to determine the trial court's jurisdiction. Accordingly, I cannot join the judgment of the Court in this proceeding.[1]


TOM GRAY
Chief Justice

Dissenting opinion delivered and filed February 24, 2010 withdrawing and replacing the dissenting opinion issued January 27, 2010. This dissenting opinion is issued to correct only a factual recitation in the January 27, 2010 dissenting opinion and should be published with the Court's opinion of that date.

---

[1] By its declaratory judgment claim, ECOM seeks a determination of its rights under the agreement and prospective relief against the City. This also seems to bring it within the trial court's jurisdiction. *See City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). Because the fraud and fraudulent inducement claims are, as I understand, alternative to the foregoing, I would not reach those, but do not find error in the Court's analysis. Either the breach of contract action or the declaratory judgment action may support attorney fees, but no claim presented would support exemplary damages.