Affirmed as Modified and Memorandum Opinion filed December 8, 2009.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00628-CV

___________________

 

McKinney & Moore, Inc.,
Appellant

 

V.

 

City of Longview, Texas,
Appellee



 



 

On
Appeal from the 188th District Court

Gregg County,
Texas



Trial Court Cause No. 2004-243-A

 



 

 

MEMORANDUM OPINION

McKinney & Moore, Inc. (AMMI@) appeals from the trial court=s grant of both a plea to
the jurisdiction based on governmental immunity and a summary judgment on the
merits favoring the City of Longview, Texas.  Longview had awarded MMI, a
general contractor, the contract to construct the Lake O= the Pines Raw Water Intake Structure.  After
MMI completed work on the project, and Longview made what it considered final
payment on the contract, MMI sued for additional sums allegedly due.  In two
issues, MMI attacks the trial court’s grant of the jurisdictional plea and the
summary judgment on the merits.  We reverse in part the trial court’s holding
on the plea to the jurisdiction, affirm the summary judgment, and affirm the
judgment as modified.

I.  Background

In November 2000, Longview opened bidding for construction
of the Lake O= the
Pines Raw Water Intake Structure.  Prior to the bidding, Longview had hired an engineering
firm who then hired a subcontractor, URS Grenier Woodward Clyde, to perform a subsurface
investigation of the project site, including taking samples from four bore holes. 
URS produced a geotechnical report dated May 1999, which was made available to
the contract bidders.  The introductory section of the report warned that the
report might “not be adequate for construction planning, cost estimating or
design of temporary works.”  There is no evidence in the record that MMI
performed any subsurface investigation on its own either prior to bidding or
after being awarded the contract.

MMI was awarded the contract.  Among the provisions
of the contract of interest in this case are the following:

C  Section
SP-27 states that subsurface and soils information is furnished for
“information only” and without any representation as to “accuracy or
adequacy.”  It also advises prospective bidders to make their own
investigations “as they deem necessary.”

C  Section
SP-33 permits the contractor to rely on the “subsurface soil
investigations[,] soil boring logs and test result” contained in the URS
report.  It further states that “Contractor recognizes that the technical data
listed reflect only the conditions for the day the data was collected and
reflects [sic] only conditions existing at the exact location of Samples.”

C  Section
3.03 makes the owner “responsible for the adequacy of the design,
sufficiency of the Contract Documents, the safety of the structure, and the
practicability of the operations of the completed project,” provided the
contractor has complied with all requirements.

C  Section
3.08, labeled “DAMAGES,” states that if the contractor is damaged during
work on the project “by the act, neglect, omission, mistake or default” of the
owner or other entity employed by the owner, the owner will reimburse the
contractor for the loss.

C  Section
6.04 mandates that “acceptance by the CONTRACTOR of final payment shall be
a bar to any claims . . . except where noted otherwise in the Contract
Documents.”

During performance of the contract, MMI reportedly encountered
unexpected difficulties, including:  (1) high rainfall which led to unprecedented
lake levels, and (2) a layer of iron ore rock which had not been revealed in
the URS report.  The contract called for a completion date of November 30,
2001.  Due to the unexpected events, MMI requested three change orders, under
procedures set forth in the contract, to extend the project’s scheduled
completion date.  On October 18, 2001, after the first change order was granted
but prior to the granting of the other two, the president of MMI, George
McKinney, wrote a letter to Longview, suggesting that his company would absorb
the added expense associated with the unexpected difficulties in exchange for granting
of the time extensions for completion of the work.  Such extensions allowed MMI
to avoid paying liquidated damages for failure to timely complete the project.

On March 20, 2003, near completion of the project,
MMI submitted a Request for Equitable Adjustment seeking the additional costs
it had incurred due to the unexpected difficulties.  Longview denied the
request in July 2003.  On December 12, 2003, after project completion, MMI
submitted to Longview a payment request, signed by McKinney and notarized,
showing that with the requested payment, the amount due on the contract would
be paid in full.  This request was apparently transmitted to Longview along
with a cover letter suggesting that MMI still sought an equitable adjustment
for additional amounts as presented in the March 20 Request for Equitable
Adjustment.  Subsequently, on January 14, 2004, MMI prepared a revised payment request,
adding an additional $2,040 to the amount allegedly due under the contract.  Longview,
however, ultimately paid only the amount contained in the original final
payment request, a total of $4,128,668.25.  MMI accepted that payment.

MMI then sued Longview, seeking recovery of the
additional expenses MMI had incurred due to the unexpected difficulties
encountered during construction.  In response, Longview filed a plea to the
jurisdiction based on governmental immunity.  Specifically, Longview argued
that although in section 271.152 of the Local Government Code, the Texas
Legislature waived immunity for municipalities for breach of contract claims,
MMI’s claims (1) were based in tort principles not breach of contract, and (2)
sought consequential damages, which were barred in such suits by section 271.153
of the Local Government Code.  Tex. Loc. Gov’t Code §§ 271.152, 271.153. 
Longview also filed a motion for summary judgment on the merits, arguing, among
other things, that as a matter of law:  (1) it did not breach the contract, (2)
MMI was estopped from seeking additional sums based on statements it made in
its requests for additional time to complete construction, (3) governmental
immunity had not been waived for MMI’s claims, and (4) MMI’s acceptance of
final payment barred it from seeking additional sums pursuant to section 6.04
of the contract.  The trial court granted both the plea to the jurisdiction and
the summary judgment on the merits without stating the grounds therefor.

II.  Plea to the Jurisdiction

In its first issue, MMI attacks the trial court’s
grant of Longview’s plea to the jurisdiction based on governmental immunity.  A
plea to the jurisdiction based on governmental immunity challenges a trial
court’s subject matter jurisdiction.  State v. Holland, 221 S.W.3d 639,
642 (Tex. 2007).  We consider a trial court’s ruling on a plea to the
jurisdiction under a de novo standard.  Id.  Generally, a plaintiff
bears the burden to plead facts affirmatively demonstrating subject matter
jurisdiction.  Id.  A plea to the jurisdiction can challenge either the sufficiency
of the plaintiff’s pleadings or the existence of jurisdictional facts.  Tex.
Dept. of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226-27 (Tex. 2004). 
When a plea attacks the pleadings, the issue turns on whether the pleader has
alleged sufficient facts to demonstrate subject matter jurisdiction.  Id.
 In such cases, we construe the pleadings liberally in the plaintiff’s favor
and look for the pleader’s intent.  City of Carrollton v. Singer, 232
S.W.3d 790, 795 (Tex. App.—Fort Worth 2007, pet. denied).  When the pleadings
neither allege sufficient facts nor demonstrate incurable defects, the
plaintiff should usually be afforded an opportunity to amend.  County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).  However, if the
pleadings affirmatively negate jurisdiction, then the plea to the jurisdiction
may be granted without leave to amend.  Id.  When a plea to the
jurisdiction challenges the existence of jurisdictional facts, a court may consider
evidence in addressing the jurisdictional issues.  Miranda, 133 S.W.3d
at 227.  If the evidence reveals a question of fact on the jurisdictional
issue, the trial court cannot grant the plea, and the issue must be resolved by
a factfinder.  Id. at 227-28.

Governmental immunity encompasses two components:  immunity
from liability and immunity from suit.  Tooke v. City of Mexia, 197
S.W.3d 325, 332 (Tex. 2006).  When a governmental entity enters into a
contract, it waives immunity from liability under the terms of the contract;
however, entering a contract does not also act as a waiver of immunity from
suit.  Id.  A waiver of immunity from suit may occur, even in the breach
of contract context, only if the legislature has waived such immunity by clear
and unambiguous language.  See Tex. Gov’t Code § 311.034; Tooke,
197 S.W.3d at 332-33.

Longview acknowledges that (1) it waived immunity
from liability by entering the contract with MMI; and (2) in Local Government
Code § 271.152, the Texas
Legislature waived immunity from suit for municipalities in regards to breach
of contract causes of action.  Tex. Loc. Gov’t Code § 271.152.  In its plea, however,
Longview asserted that MMI’s claims in the present lawsuit are, in actuality,
barred by operation of sections 271.152 and 271.153 of the code.  According to
Longview, MMI’s claims (1) do not in fact sound in contract, but instead are
grounded in tort theories of recovery, in violation of section 271.152; and (2)
impermissibly seek consequential damages, rather than direct contract damages,
in violation of section 271.153.  The sections in question provide in full as
follows:

§ 271.152. Waiver of Immunity to Suit for Certain Claims

            A local governmental entity that is authorized
by statute or the constitution to enter into a contract and that enters into a
contract subject to this subchapter waives sovereign immunity to suit for the
purpose of adjudicating a claim for breach of the contract, subject to the
terms and conditions of this subchapter.

§ 271.153. Limitations on Adjudication Awards

            (a) The total amount of money awarded in an
adjudication brought against a local governmental entity for breach of a
contract subject to this subchapter is limited to the following:

            (1) the balance due and owed by the local
governmental entity under the contract as it may have been amended, including
any amount owed as compensation for the increased cost to perform the work as a
direct result of owner-caused delays or acceleration;

            (2) the amount owed for change orders or
additional work the contractor is directed to perform by a local governmental
entity in connection with the contract;  and

            (3) interest as allowed by law.

            (b) Damages awarded in an adjudication brought
against a local governmental entity arising under a contract subject to this
subchapter may not include:

            (1) consequential damages, except as expressly
allowed under Subsection (a)(1);

            (2) exemplary damages; or

            (3) damages for unabsorbed home office
overhead.  

Id. §§ 271.152,
271.153.  We will discuss each basis for the plea to the jurisdiction in turn.

A.  Tort or
Breach of Contract?

As stated, Longview initially contends that MMI’s
claims sound in tort instead of breach of contract, and thus, immunity from suit
has not been waived under section 271.152.  MMI, on the other hand, insists
that its cause of action is based on the contract, and thus, governmental
immunity is waived for this suit by section 271.152.

We begin our analysis by examining the claims raised
in MMI’s live petition.  In the “Background Facts” section of its Second
Amended Original Petition, MMI explained the basics of the contract between it
and Longview for construction of the Lake O=
the Pines Raw Water Intake Structure, as well as the unexpected difficulties
which led to additional costs of construction.  In a section entitled “Damages”
and subtitled “Breach of Contract Against the City of Longview,” MMI asserted
that Longview’s refusal to pay the additional costs breached the contract and resulted
in damages.[1]

This single statement is the only language in the
petition stating a cause of action.  Thus, on the face of its petition, MMI
asserts only a breach of contract cause of action.

On appeal, MMI cites to sections 3.03 and 3.08 of the
contract in support of its assertion that its pleadings raised a breach of
contract cause of action and not a tort cause of action.  As explained above,
section 3.03 makes Longview “responsible for the adequacy of the design,
sufficiency of the Contract Documents, the safety of the structure, and the
practicability of the operations of the completed project,” provided that MMI
has complied with all contract requirements.  Nothing in this section suggests
that MMI as contractor would be entitled to money damages should any of the
referenced items be deemed inadequate, insufficient, unsafe, or impractical. 
Section 3.08, on the other hand, specifically gives MMI a right to recover
monetary damages from Longview under certain circumstances.  Specifically,
section 3.08 provides that if MMI is damaged during work on the project “by the
act, neglect, omission, mistake or default” of Longview, or any entity employed
by Longview, Longview must reimburse MMI for its loss.

It is important at this juncture to differentiate
between the two unexpected construction difficulties that MMI maintains caused
its damages:  unprecedentedly high lake levels and the undisclosed layer of
iron ore rock.  MMI failed to demonstrate that any damages relating to lake
levels were the result of Longview’s breaching the contract.  Consequently, the
trial court did not err in granting the plea to the jurisdiction on claims
pertaining to lake levels.

In regards to the iron ore layer, MMI contends that (1)
its damages (i.e., increased costs of construction) resulted from the
“act, neglect, omission, mistake or default” of Longview’s subcontractor URS,
in that the latter failed to detect and report upon the layer’s existence, and
(2) Longview therefore breached the contract by refusing to pay damages under
section 3.08 of the contract.  In response, Longview argues that because MMI’s
claims ultimately rest on the assertion that URS negligently conducted
or interpreted the soil borings, MMI’s claims in this lawsuit sounded in tort
(negligence) rather than in breach of contract.

Longview’s argument, however, ignores the fact that
section SP-33 of the contract permitted MMI to rely on the “subsurface soil
investigations[,] soil boring logs and test result” contained in the URS
report.[2] 
As set forth in this provision, MMI’s ability to rely on the URS report was
part of the benefit of the bargain struck in the contract.  Thus, MMI’s claims—that
it was damaged because the URS report was deficient, and consequently, Longview
breached the contract by not compensating MMI for those damages—are firmly
grounded in the contract.  We therefore reject Longview’s argument in its plea
to the jurisdiction that MMI’s claims sound in tort instead of breach of
contract, and thus, immunity has not been waived under section 271.152 for the
iron-ore-layer claims.

B. 
Consequential Damages?

Longview additionally asserted in its plea to the
jurisdiction that MMI’s cause of action sought consequential damages in
violation of section 271.153(b)(1) of the Local Government Code.[3]  Longview insists
that it has paid the amount actually due on the contract itself, as evidenced
by MMI’s submission of a final pay request, and thus any additional sums sought
would be consequential damages.  We disagree.

Although section 271.153 does not define “consequential
damages,” the phrase is typically used, in the breach of contract context, to
describe damages that resulted naturally, but not necessarily, from a breach.  See
Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997). 
Such damages are not recoverable unless the parties are found to have
contemplated, at the time of contract formation, that the damages in question
would be a probable result of breach.  Mead v. Johnson Group, Inc., 615
S.W.2d 685, 687 (Tex. 1981).  In other words, to be recoverable, consequential
damages must be foreseeable and directly traceable to the breach and, indeed, be
a result of the breach.  Stuart v. Bayless, 964 S.W.2d 920, 921 (Tex. 1998).
 The phrase “consequential damages” is also often contrasted with the phrase
“direct damages,” which denotes damages that are the necessary and usual result
of a breach, i.e., that flow naturally and necessarily from the breach. 
Boyer, Inc. v. Trinity River Auth. of Tex., 279 S.W.3d 354, 358 (Tex.
App.—Fort Worth 2008, pet. denied).  Therefore, by definition, if particular
damages are specifically accounted for in the contract, they are direct, not
consequential, in nature.  See id.

Here, damages such as those alleged by MMI were
clearly contemplated in the contract.  As discussed above, section 3.08 of the
contract provides that if MMI is damaged during work on the project “by the
act, neglect, omission, mistake or default” of Longview or any entity Longview employed,
Longview must reimburse MMI for that loss.  Thus, under the terms of section
271.153, such reimbursement is a “balance due and owed by the local
governmental entity under the contract.”  See Tex. Loc. Gov’t Code §
271.153(a)(1).  The fact that the contract language contemplates these damages
renders them direct and not consequential damages.  We therefore reject
Longview’s consequential damages argument made in its plea to the jurisdiction.[4]  Based on the
foregoing analysis, we sustain MMI’s first issue in part and hold that the
trial court had jurisdiction to consider the merits of MMI’s claim relating to
the undetected iron ore layer.

III.  Summary Judgment

In its second issue, MMI attacks the trial court’s
grant of summary judgment favoring Longview.  We address Longview’s traditional
grounds for summary judgment.[5] 
We review a grant of traditional summary judgment under a de novo standard.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We
take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Where, as here,
a trial court grants summary judgment without specifying the grounds therefore,
we must affirm the judgment if any of the grounds presented in the motion is
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872-73 (Tex. 2000).

In its motion, Longview argued, among other things,
that as a matter of law:  (1) it did not breach the contract, (2) MMI was estopped
from seeking additional sums based on statements it made in its requests for
additional time to complete construction, (3) governmental immunity had not been
waived for MMI’s claims, and (4) MMI’s acceptance of final payment barred it
from seeking additional sums pursuant to section 6.04 of the contract.  We
begin by addressing the last of these grounds, pertaining to acceptance of
final payment as a bar.

As set forth above, section 6.04 of the contract
provides that “acceptance by the CONTRACTOR of the final payment shall be a bar
to any claims . . . except where noted otherwise in the Contract Documents.” 
In its motion, Longview asserted that this section barred MMI’s breach of
contract claims because the evidence conclusively established that MMI accepted
Longview’s final payment.  In response to this ground, MMI made two arguments. 
First, MMI asserted that the reservation of rights letter submitted by MMI at
the same time as the pay request permitted MMI to receive this “last payment”
without making it a “final payment” under section 6.04.  Second, MMI asserted
that a second, revised final payment request, adding $2,040 to the total,
rendered the initial final pay request not truly a final pay request for
purposes of section 6.04.  In a reply to MMI’s response, Longview contended
that the reservation of rights letter on which MMI relied was an impermissible
attempt to unilaterally change the contract, i.e., to permit MMI to both
accept final payment and preserve its claim for additional sums under the
contract.[6]

We find MMI’s arguments to be without merit. 
Although the phrase “final payment” is not defined in section 6.04, other
sections of the contract illuminate the intended meaning.  Section 5.04
explains that Longview was to make “partial payments” to MMI each month based
on the value of the work completed, minus an amount to be retained until “final
payment.”  Section 5.07, entitled “Final Payment,” further explains that once
the work had been certified as completed, Longview was obligated to pay MMI
(between the 30th and 35th days after certification) “the balance due [MMI]
under the terms of [the] contract.”  Such payment was termed the “final payment.”

In what MMI acknowledges was a request for final
payment, MMI indicated that with the requested payment, “100%” of the balance
due under the contract would be paid.  It is undisputed that in response to the
request for final payment, Longview paid the full amount requested and
specified as 100% of the contract balance.  Thus, pursuant to section 5.07,
this payment was a “final payment.”

Upon receiving the final payment, MMI had the
election to either refuse the payment and assert its claims for additional
costs of construction (both those referenced in the reservation of rights
letter and those subsequently added to the revised final payment request), or
accept the payment and, under section 6.04, waive its claims for additional
amounts.  It is undisputed that MMI accepted the payment in question.[7]  Because the
evidence conclusively demonstrated that MMI’s claim was barred by operation of
section 6.04, the trial court did not err in granting summary judgment on that
basis.[8] 
We overrule MMI’s second issue.

Based on our foregoing holdings, we modify the trial
court’s judgment to remove the grant of Longview’s plea to the jurisdiction in
regards to MMI’s claims concerning the undetected layer of iron ore.  We
further modify the grant of summary judgment to apply only to the claims
pertaining to the iron ore layer.  We affirm the judgment as modified.

                                                                                                                                    

                                                                                    

                                                                        /s/        Chief
Justice Adele Hedges

 

 

 

Panel consists of Chief
Justice Hedges, and Justices Seymore and Sullivan.

 









[1] The actual language of
this allegation is as follows:  “Defendant’s failure and refusal to pay MMI for
its completed contractual and extra work on the Project constitutes a breach of
contract and has resulted in damages to MMI in the amount of at least
$410,651.50 inclusive of overhead and profit, for which amount MMI now sues.” 
As stated above, in this context, we must construe pleadings liberally in the
plaintiff’s favor.  See Singer, 232 S.W.3d at 795.

 





[2] In its motion for summary
judgment, Longview asserted that MMI was prohibited from relying on the URS
report by section SP-27 of the contract, which provided that subsurface and
soils information was being furnished for “information only” and without any
representation as to “accuracy or adequacy,” and also advised prospective
bidders to make their own investigations “as they deem necessary.”  As MMI
points out, however, this general provision of the contract must give way to
section SP-33, which specifically permitted MMI to rely on the “subsurface soil
investigations[,] soil boring logs and test result” contained in the URS
report.  See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132,
133-34 (Tex. 1994) (stating that in interpreting a contract, each part should
be given effect, and a more specific provision must be read as controlling,
when applicable, over a more general provision).

Longview additionally asserted in its motion for
summary judgment that section SP-33 itself also provided limitations on any
reliance on the URS report where it cautioned that “the technical data listed
reflect only the conditions for the day the data was collected and reflects
[sic] only conditions existing at the exact location of Samples.”  In the
summary judgment record, there is evidence on both sides of the issue of
whether, in light of this language, MMI reasonably relied on the URS report in
this case.  However, this issue goes to the merits of MMI’s claims and not to the
question of whether the trial court has jurisdiction over those claims.  





[3] In its plea, Longview
actually asserted that MMI sought “compensatory damages.”  They corrected this
misnomer in their appellate briefing to “consequential damages.”

It is not clear from section 271.153 itself whether
its terms are meant to simply be a limitation on the damages available in
breach of contract actions against local governmental entities, or whether its
terms are jurisdictional, i.e., that governmental immunity is not waived
to the extent the party suing the governmental entity seeks damages prohibited
by the section.  Despite repeatedly referring to the section as “limiting
damages,” the Texas Supreme Court held in Tooke that the provisions of
section 271.153 are jurisdictional.  197 S.W.3d at 344-46.





[4] Longview does not make
any other argument based on the limitations on awards found in section
271.153.  In its plea, Longview asserted that section 271.153 does not permit
an award of “equitable damages,” but Longview further acknowledged that MMI did
not appear to be seeking such damages.  We agree that MMI’s pleadings seek
direct contract damages pursuant to section 3.08 of the contract.





[5] Although Longview stated
that it was raising both no-evidence and traditional grounds for summary
judgment, Longview failed in its motion to identify the element or elements of
MMI’s cause of action on which there was allegedly no-evidence, as required by
Rule 166a(i) of the Texas Rules of Civil Procedure.  See Tex. R. Civ. P.
166a(i); McConnell v. Southside I.S.D., 858 S.W.2d 337, 342 (Tex.
1993).  Furthermore, we need not address the merits of the no-evidence grounds
because we find one of the traditional grounds to be dispositive of this
appeal.





[6] Longview’s unilateral
change argument was based on the fact that MMI acknowledged that (1) it made a
final pay request, (2) Longview paid the amount requested, and (3) MMI accepted
that payment.  Longview argues that under the express waiver of claims language
in section 6.04, MMI cannot accept payment of a final pay request while
attempting to reserve additional claims; thus, according to Longview, the
reservation of additional claims while accepting final payment was an attempt
to unilaterally alter the contract.  MMI does not address this argument in its
briefing.





[7] In his deposition, George
McKinney acknowledged that he signed the final pay request thereby swearing
that the percentage of the balance reflected therein was 100%.  He further
agreed that Longview made the requested payment and he accepted it.





[8] MMI argues neither (1)
that the claim bar of section 6.04 does not apply to MMI’s claim in this
lawsuit, nor (2) that any other section of the contract preserves its claim
from application of section 6.04.  In regards to another ground for summary
judgment, MMI argued that the notification requirement contained in section
6.04 applied only to “extra work” claims discussed in part 6 of the contract. 
As stated, MMI does not make a similar argument regarding the claim-bar portion
of section 6.04.  The language of section 6.04 does not express any intent to
limit its application to “extra work” claims under part 6.  Additionally, the
claim bar contained in section 6.04 works both ways, i.e., final
acceptance of the work by Longview and acceptance of final payment by MMI acts
as a “bar to any claims by either party.”  Because part 6 of the contract does
not discuss any claims that could have been made by Longview, it would appear
that the claim bar contained in section 6.04 was not intended to be limited in
application to part 6 of the contract; otherwise, a portion of it would be
rendered meaningless.  See generally Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006) (stating that when construing
a contract, a court should harmonize and give effect to all the provisions of
the contract so that none will be rendered meaningless).