**Opinion issued January 31, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00870-CV

_____

**HARRIS COUNTY HOUSING AUTHORITY, Appellant**

**V.**

**GUY RANKIN, IV, Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-24968**

---

## O P I N I O N

The Harris County Housing Authority appeals the trial court's denial of its

motion to dismiss for lack of jurisdiction after Guy Rankin, IV sued it for breach of

contract, anticipatory breach of contract, and fraud. In three issues, the Housing

Authority argues the trial court lacked subject-matter jurisdiction over each of Rankin's claims.

We affirm, in part, and reverse, in part.

## Background

Rankin served as the chief executive officer for the Housing Authority for a number of years. Rankin had an employment contract with the Housing Authority for the work he performed as chief executive officer. Under the employment contract, the Housing Authority could terminate Rankin without cause by paying him a full year's salary.

The Housing Authority set a board meeting for March 21, 2012. One topic set for the board meeting was whether the Housing Authority would buy out Rankin's employment contract. There is no indication in the record that the Housing Authority, at that time, considered Rankin to have breached his employment contract. Ultimately, Rankin and the Housing Authority began to negotiation a new contract that would buy out Rankin's employment contract for a lesser amount than a full year's salary. The parties entered into the new contract on March 21, 2012.

The new contract was titled "Amended Employment and Buy-Out Agreement Between the Harris County Housing Authority and Guy Rankin, IV." The contract provided that the Housing Authority "now buys-out the remainder of

2

Rankin's employment contract and Rankin agrees to relinquish his position as CEO and Executive Director of" the Housing Authority. As a result, the contract required the Housing Authority to pay a one-time severance payment within seven days of the date that the Housing Authority's board approved the agreement. The parties also agreed in the buy-out agreement to "mutually release each other from any claims, demands, and causes of action they may ever have had against the other and no litigation against the other Party may be brought or pursued."

The Housing Authority's board approved the agreement on March 21, 2012. It did not pay the amount for severance under the new contract, however. Rankin filed suit on April 30, 2012, alleging breach of contract, anticipatory breach of contract, and fraud. The Housing Authority answered, asserting governmental immunity.

The Housing Authority subsequently filed a motion to dismiss for lack of jurisdiction based on its claim of governmental immunity. The trial court denied the motion, and the Housing Authority brought this appeal.

## Governmental Immunity

In three issues, the Housing Authority argues the trial court erred by denying its motion to dismiss for each of Rankin's claims.

**A.      Standard of Review**

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Id.* at 446. The absence of subject-matter jurisdiction may be raised in various procedural vehicles such as a motion to dismiss for lack of jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. *See Mayhew v. Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). When conducting a de novo review, the appellate court exercises its own judgment and re-determines each legal issue, giving no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

In deciding a plea to the jurisdiction, a court may not weigh the claims' merits, but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The court of appeals must take the allegations in the petition as true and construe them in favor of the pleader. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

**B. Analysis**

Like its counterpart of sovereign immunity, governmental immunity protects political subdivisions of the state, including counties and its agencies, from liability and lawsuits. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). Governmental immunity is waived only by clear and unambiguous language indicating the Legislature's intent do so. *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 838 (Tex. 2010); *Wight Realty Interests, Ltd. v. City of Friendswood*, 333 S.W.3d 792, 796 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Governmental immunity consists of immunity from suit and immunity from liability. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Ben Bolt*, 212 S.W.3d at 324. Immunity from suit is jurisdictional and bars suit. *Harris Cnty. Hosp. Dist.*, 283 S.W.3d at 842. Immunity from liability is not jurisdictional and, accordingly, is not at issue in this appeal. *See id.*

The parties agree that the Housing Authority is a governmental entity to which governmental immunity generally applies. *See* TEX. LOC. GOV'T CODE ANN. § 392.006 (Vernon Supp. 2012) (identifying a housing authority as a unit of

5

government for all purposes). The issues in this appeal, then, concern whether the Legislature has waived the Housing Authority's immunity from suit for each of Rankin's claims.

In its third issue, the Housing Authority argues that the trial court erred by not dismissing Rankin's claim of fraud. On appeal, Rankin concedes that his fraud claim is barred by governmental immunity. We agree. *See LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 209 (Tex. App.—Dallas 2012, no pet.) (holding governmental immunity from suit has not been waived for fraud claims). Accordingly, we sustain the Housing Authority's third issue.

In its first and second issues, the Housing Authority argues that the trial court erred by not dismissing Rankin's claims of breach of contract and anticipatory breach of contract. Rankin argues that the Housing Authority's immunity from suit was waived by a combination of section 271.152 of the Texas Local Government Code, and the Supreme Court of Texas's opinion in *Lawson*. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005); *Tex. A&M Univ.— Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002).

Section 271.152 of the Texas Local Government Code provides,

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

6

TEX. LOC. GOV'T CODE ANN. § 271.152. It is undisputed by the parties that the Housing Authority is a "local governmental entity that is authorized by statute or the constitution to enter into a contract." *See id.* At issue is whether the Housing Authority entered "into a contract subject to" subchapter I of chapter 271 of the Texas Local Government Code. *See id.* Section 271.151—also in subchapter I of section 271—defines a "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (Vernon 2005).

It is undisputed that Rankin's original employment agreement was a contract subject to subchapter I of chapter 271. It was a written contract; it stated the essential terms of Rankin's employment; it was for providing services to the Housing Authority, specifically Rankin's acting as chief executive officer of the Housing Authority; and it was properly executed on behalf of the Housing Authority. *See id.*; *Wight Realty*, 333 S.W.3d at 796–97 (holding term "services" under section 271.151 encompasses a wide array of activities, including generally any act performed for the benefit of another under some agreement).

Rankin argues that the Housing Authority could not regain immunity by superseding a contract for which immunity had been waived with a contract for

7

which immunity had not been waived. Rankin relies on *Lawson* as authority for this argument.

In *Lawson*, a faculty member of the university brought a Whistleblower Act claim against the university after it terminated his employment. 87 S.W.3d at 518. The suit ended when the parties entered into a settlement agreement. *Id.* at 519. Lawson subsequently brought another suit, claiming breach of the settlement agreement. *Id.* The university filed a plea to the jurisdiction, claiming to be immune from suit for breach of contract. *Id.* The matter was ultimately brought to the Supreme Court of Texas. *Id.* at 520.

The court recognized that the Legislature had waived immunity for Whistleblower Act claims but not for the type of breach of contract action that Lawson had brought in the second suit. *Id.* at 521. A plurality of the court held "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.* It reasoned, "We do not think the Legislature intended by waiving the bar of immunity for claims under the Whistleblower Act that settlements would be prevented or delayed by a revival of the bar in the form of immunity from suit for breach of settlement agreements." *Id.* Finally, it held that, "having waived immunity from suit in the Whistleblower Act, the State may not

8

now claim immunity from a suit brought to enforce a settlement agreement reached to dispose of a claim brought under that Act." *Id.* at 522–23.

The Housing Authority argues that, because *Lawson* is a plurality opinion, it is not binding. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994) (holding plurality opinion is not "authority for determination of other cases, either in this Court or lower courts"). While this is generally true, this Court has subsequently applied *Lawson*. *Porretto v. Patterson*, 251 S.W.3d 701, 712 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We further note that *Lawson* has been applied by a number of other appellate courts. *See, e.g.*, *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 927 (Tex. App.—Dallas 2007, pet. denied) (*Kalyanaram I*); *City of Carrolton v. Singer*, 232 S.W.3d 790, 796 (Tex. App.—Fort Worth 2007, pet. denied); *Kalyanaram v. Univ. of Tex. Sys.*, No. 03-05-00642-CV, 2009 WL 1423920, at *3 (Tex. App.—Austin May 20, 2009, no pet.) (mem. op.) (*Kalyanaram II*). Finally, while some opinions from other courts found *Lawson* to be factually distinguishable, no court has declined to apply *Lawson* under the applicable facts.

The Housing Authority also argues that *Lawson* is distinguishable from the present case because there was no original suit and the second contract in the present case was not a settlement agreement. Other courts, however, have not limited *Lawson* to the specific facts of the case. For example, in *Kalyanaram I*, the

9

plaintiff's claims in the first suit were identified as "largely Whistleblower Act-type claims." 230 S.W.3d at 924. The Dallas Court of Appeals held that this was sufficient to invoke the waiver of immunity and, subsequently, fall under *Lawson*. *Id.* at 927–28.

In *Kalyanaram II*, the Austin Court of Appeals agreed with the Dallas Court of Appeals' analysis. 2009 WL 1423920, at *3. *Kalyanaram II* had a further distinction, however. In that case, the plaintiff in the second suit had not brought a breach of contract claim. Nevertheless, the court concluded that, "[w]hile Kalyanaram here proceeds by petition for bill of review, without a breach-of-contract claim, his petition still challenges the settlement agreement with the University." *Id.* This, the court held, was enough to fit the case within the scope of *Lawson*. *Id.*

Perhaps most significantly, in *Singer*, there was no original lawsuit. Instead, the City of Carrolton notified the Singers that it intended to condemn a portion of their property for the purpose of extending a public road. *Singer*, 232 S.W.3d at 793. No eminent domain proceeding was ever brought. Instead, the Singers entered into an agreement with the city to convey the property along with certain other agreements. *Id.* The Singers subsequently felt that the city had failed to meet all of its obligations under the conveyances and brought suit for breach of contract. *Id.* at 794. Even though there was no original suit and, accordingly, no

10

settlement over the suit, the court nevertheless held that the case fit within the scope of *Lawson*.

The court reasoned that the relevant inquiry to fit within the scope of *Lawson* was the subject matter of what the parties resolved in the agreement. *Id.* at 796. The court held that the parties had resolved a takings claim. *Id.* at 799. Because the city would not have been immune from the takings claim, under *Lawson*, it also could not be immune from the resolution of that claim. *Id.* at 800.[1]

Moreover, even in cases where courts have declined to apply *Lawson*, the cases suggest that *Lawson* applies to situations beyond just when a lawsuit has been filed. For example, in *Gracia*—a case on which the Housing Authority relies—a school declined to renew a coach's contract for the next year after a criminal investigation of hazing had been initiated. *Donna Indep. Sch. Dist. v. Gracia*, 286 S.W.3d 392, 393 (Tex. App.—Corpus Christi 2008, no pet.). Gracia requested a hearing pursuant to the Texas Education Code. *Id.* Before the hearing, the school district and Gracia entered into a settle agreement. *Id.* Gracia subsequently sued the school district for breach of contract. *Id.* The Corpus Christi court of appeals noted that Gracia settled any claims against the school

---

[1] As discussed in more detail below, we recognize that the Waco Court of Appeals has reached a different conclusion under similar facts. *See City of Midlothian, Tex. v. ECOM Real Estate Mgmt., Inc.*, No. 10-09-00039-CV, 2010 WL 311433 (Tex. App.—Waco Jan. 27, 2010, pet. dism'd by agr.) (judgment vacated by agreement).

district before the hearing. *Id.* at 395. At that time, immunity had not been waived because Gracia had not exhausted his administrative remedies. *See id.* As a result, "Gracia settled a claim that, at that point in time, had no adjudicative value in our court system." *Id.* The court's focus, then, was on whether immunity had previously been waived, not whether suit had been filed.

Similarly, in *Neal*, after the plaintiff had been turned down for a different position with the Texas Department of Health, she filed an internal grievance. *Tex. Dept. of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *1 (Tex. App.—Austin May 6, 2011, pet. denied) (memo. op.). She subsequently signed a settlement agreement with the department. *Id.* Later in the year, she filed suit, including a claim for breach of the settlement agreement. *Id.* at *2. The Austin Court of Appeals held that there was no original waiver of immunity because she had not exhausted her administrative remedies. *Id.* at *3. Agreeing with *Gracia*, the court held that the lack of any waiver meant that *Lawson* did not apply. *Id.* at *4.

The critical inquiry stemming from *Lawson* and its progeny, then, is not focused on whether a suit has been filed, but is focused, instead, on whether the governmental entity had waived its immunity at the time the subsequent agreement was reached. *See Lawson*, 87 S.W.3d at 521 (holding "when a governmental entity is *exposed to suit* because of waiver of immunity, it cannot nullify that waiver by

12

settling the claim with an agreement on which it cannot be sued" (emphasis added)); *Patterson*, 251 S.W.3d at 712 (holding "[t]he policy supporting [the holding in *Lawson*] is that the government should not regain immunity it previously has waived by settling a case").

The Housing Authority argues that immunity from suit had not been waived because there was no breach of Rankin's original employment contract. This does not mean, however, that immunity had not been waived. Section 271.152, to which the employment contract applies, expressly states, "A local governmental entity . . . that enters into a contract . . . waives sovereign immunity to suit . . . ." TEX. LOC. GOV'T CODE ANN. § 271.152. By the plain language of the statute, then, immunity from suit was waived at the time the Housing Authority entered into the contract with Rankin. *See id.* It was not dependent on a breach to occur for waiver to apply.

The Supreme Court of Texas has held this as well. "While the mere act of self-insuring does not itself constitute a waiver of immunity, . . . entering into a 'written contract stating the essential terms of [an] agreement for providing goods or [insurance] services to [a] local governmental entity' clearly does." *Ben Bolt*, 212 S.W.3d at 327. Accordingly, we hold that the Housing Authority waived its immunity at the moment it entered into the employment contract with Rankin.

13

Based on this holding, the Housing Authority's claim that the buy-out agreement superseded the employment contract has no bearing. As the court held in *Lawson*, "The government cannot recover waived immunity by settling without defeating the purpose of the waiver in the first place." 87 S.W.3d at 521. To this end, the purpose of the subsequent agreement becomes relevant to our analysis.

In *ECOM*, the Waco Court of Appeals reached a different holding from the Fort Worth Court of Appeals in *Singer* based on similar facts. *See City of Midlothian, Tex. v. ECOM Real Estate Mgmt., Inc.*, No. 10-09-00039-CV, 2010 WL 311433 (Tex. App.—Waco Jan. 27, 2010, pet. dism'd by agr.) (judgment vacated by agreement). While the court in *ECOM* noted that no eminent domain suit had been initiated, the court held that it was more important that "the easement agreement itself contains no language suggesting an intent to settle an eminent domain claim." *Id.* at *6. In that situation, the court held the same facts could support a conclusion that the conveyance of property constituted a voluntary sale, for which immunity was not waived. *See id.* (holding "[t]o say that the easement agreement settled an eminent domain claim, when it contains no language to this effect and no eminent domain proceeding was pending, further blurs the distinction between an entity's power to purchase and its power to take").

Here, however, the buy-out contract came about when the Housing Authority set an issue for its board meeting on whether to buy-out Rankin's

14

existing employment contract. The buy-out agreement specifically states that its purpose was to "buy[]-out the remainder of Rankin's employment contract and [for] Rankin [to] agree[] to relinquish his position as CEO and Executive Director of" the Housing Authority. The parties expressly agreed in the buy-out agreement to "mutually release each other from any claims, demands, and causes of action they may ever have had against the other and no litigation against the other Party may be brought or pursued."

In other words, like a settlement agreement, one function of the buy-out agreement was to secure a release of all claims Rankin may have had for which the Housing Authority's immunity from suit had already been waived, in exchange for a payment of cash. Rankin now alleges that he had a potential claim against the Housing Authority which was released by the buy-out agreement, and that the Housing Authority breached the buy-out agreement by refusing to pay the cash consideration for Rankin's resignation and release of claims. Like the situation in *Lawson*, the Housing Authority, having waived immunity from suit by contracting for services with Rankin, may not now claim immunity from suit brought to enforce an agreement that settled claims arising under that contract for services. *See Lawson*, 87 S.W.3d at 522–23.

We overrule the Housing Authority's first two issues.

15

## Conclusion

We affirm the trial court's order denying the Housing Authority's motion to dismiss for lack of jurisdiction as it applies to Rankin's breach of contract and anticipatory breach of contract claims. We reverse the trial court's order denying the Harris County Housing Authority's motion to dismiss for lack of jurisdiction as it applies to Rankin's fraud claim. We remand the case to the trial court for rendition of an order dismissing Rankin's fraud claim and for further proceedings.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Massengale, and Brown.