

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SOCORRO INDEPENDENT SCHOOL DISTRICT, | § | No. 08-18-00091-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 5 |
| | § | |
| JAMES HAMILTON, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2016DCV1566) |
| | § | |

**O P I N I O N**

In this interlocutory appeal, Socorro Independent School District (SISD or District) challenges the trial court's denial of its plea to the jurisdiction. SISD asserts that the doctrine of governmental immunity deprives the trial court of subject matter jurisdiction over Appellee James Hamilton's claim for breach of a separation agreement. Finding no error, we affirm.

**BACKGROUND**

Hamilton was employed for many years by SISD after having been hired in October of 1996. On April 14, 2014, Hamilton entered into a term contract to work as the head orchestra director at William D. Slider Middle School for the 2014-2015 school year. By its terms, the employment contract ended on May 30, 2015.

By affidavit, Hamilton (who was over 40 years of age at the time) asserted that the principal of the school informed him he was going to recommend the non-renewal of his contract for the 2015-2016 school year. Upon hearing of the non-renewal, Hamilton then anticipated he would file a lawsuit against SISD for age discrimination. After some negotiations, however, he signed a "Separation Agreement and Release of Claims," on April 16, 2015, which was also signed by the Superintendent of Schools for SISD.[1] Hamilton asserted that he entered into the agreement "in exchange for paid administrative leave, unemployment compensation, and a neutral reference." Hamilton further asserted that, among its other terms, the settlement released his rights to any federal or state law claims including claims for discrimination under Federal and Texas law.

By its terms, the agreement purported that it resolved all claims and causes of action of any kind whatsoever arising out of Hamilton's employment with SISD. SISD acknowledged that the circumstances presented an involuntary work separation and SISD would not argue waiver or release if Hamilton filed an application for unemployment insurance benefits. The parties further agreed that Hamilton would remain on administrative leave with pay up until the effective date of his resignation. Hamilton agreed to submit his irrevocable letter of resignation effective May 30, 2015. SISD agreed to provide a neutral reference of Hamilton to prospective employers. As specified, the neutral reference would be limited to Hamilton's beginning and ending dates of employment, positions held, and salary. The parties also agreed that no report would be made to the Texas Education Agency or the State Board for Educator Certification and Hamilton would

---

[1] Hamilton's counsel stated in his oral argument that Hamilton was notified of the non-renewal of his contract on April 8, 2015, or eight days before he signed the settlement agreement and release of claim. Although we recognize that counsel's argument is not evidence, SISD's counsel did not contest this assertion and we were unable to otherwise locate the date of notification in our record. This date, however, appears to be consistent with the general timeframe asserted in Hamilton's affidavit.

give up any privileges he had pursuant to Chapter 21 of the Texas Education Code. The agreement stated that its terms were contractual, and its purpose was "to compromise disputed claims, avoid litigation, and buy peace[.]"

For valuable consideration, the agreement expressly provided that both parties agreed to abide by the following release and discharge of claims and causes of action:

> Release. For valuable consideration stated above, both parties agree to fully release and discharge each other, and each other's past, present, and future trustees, employees, representatives, and assigns, in both their individual and official capacities, from all claims, including administrative claims, causes of action, rights and obligations arising under the federal or state constitutions, laws or regulations, or board policies regarding any acts or events occurring before the date of execution of this Agreement, whether or not such actions could have been brought in this case or arise out of the facts of this case including without limitation any claims or causes of action arising under Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act, the Texas Commission on Human Rights Act or any other state or federal equal employment opportunity law.

Nearly a year later, on April 13, 2016, Hamilton filed an original petition alleging that SISD breached the settlement agreement by giving negative references when he applied for teaching positions at local school districts. Hamilton's petition asserted that he had fulfilled his obligation under the agreement by releasing SISD from liability of all claims regarding any acts or events occurring before the date of the execution of the agreement. Hamilton alleged causes of action for breach of contract, fraud, and fraudulent inducement. Responding, SISD filed a general denial and pleaded several affirmative defenses.

On March 30, 2018, SISD filed a plea to the jurisdiction and no evidence motion for summary judgment. As a local governmental entity, SISD asserted that Hamilton's claims were barred by immunity which SISD had not waived. SISD also asserted that Hamilton had offered no factual basis for his alleged breach of contract, fraud, or fraudulent inducement claims.

3

Responding, Hamilton first included a procedural history of the case in which he affirmatively informed the trial court of his intent to proceed solely on his breach of settlement claim and to abandon his other two causes of action as follows:

> Plaintiff hereby waives his fraud [sic] fraudulent inducement claims. The parties have agreed to limit the May 16, 2018 hearing to Defendant's Plea to the Jurisdiction and therefore this response will be limited to the plea to the jurisdiction issues. The Parties agreed that the Motion for Summary Judgment would only be heard after the Court has signed an order on the Plea to the Jurisdiction and that additional discovery is necessary for a response to the Motion for Summary Judgment.

As jurisdictional evidence in support of his breach of settlement claim, Hamilton attached (1) his own affidavit; (2) the separation agreement and release of all claims; (3) his original petition; (4) his 2014-2015 employment contract; and (5) pro-forma contracts and non-renewal documents from SISD. Hamilton's affidavit included his assertion that he anticipated filing a lawsuit for age discrimination against SISD before he negotiated the settlement agreement with SISD. Later, when the trial court held a hearing on SISD's plea, Hamilton confirmed he had waived his fraud claims and the parties agreed they were proceeding solely on the breach of contract claim. After argument from both sides, the trial court denied SISD's plea to the jurisdiction directed at the breach of contract cause of action.

This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## DISCUSSION

SISD appeals the trial court's order denying its plea to the jurisdiction asserting that the doctrine of governmental immunity applies to it as a political subdivision of the state and protects it from Hamilton's breach of contract suit. Responding, Hamilton asserts that waiver of immunity

4

applies to his breach of contract claim based on multiple reasons. First, Hamilton asserts that he contractually released a class of claims for which immunity had been waived when he entered into a separation agreement with SISD, and thus, SISD cannot assert immunity against his allegation that SISD has breached the separation agreement. Second, Hamilton asserts that the separation agreement itself qualifies as a contract on which immunity has been waived by the Legislature. Third, Hamilton asserts that waiver should apply given that he relinquished due process rights by entering into the separation agreement. Fourth, Hamilton asserts that equitable principles support waiver of immunity under the circumstances of this case. Finally, Hamilton asserts that SISD waived immunity by its conduct in these circumstances.

*Standard of Review*

A plea to the jurisdiction is a mechanism by which a party contests the trial court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is essential to a court's authority. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject matter jurisdiction. *Id*. Whether a trial court has subject matter jurisdiction is a question of law and is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When conducting a de novo review, the appellate court exercises its own judgment and re-determines each legal issue, giving no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). In deciding a plea to the jurisdiction, a court may not weigh the merits of the claims but must consider only the evidence pertinent to the jurisdictional inquiry. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The court of appeals credits as true all evidence favoring the non-movant and draws

all reasonable inferences and resolves any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 228.

*Governmental Immunity*

Like its counterpart of sovereign immunity, governmental immunity protects political subdivisions of the state, including school districts, from liability and lawsuits. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been waived or abrogated by the Legislature. *Id*. Governmental immunity consists of immunity from suit and from liability. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). Immunity from suit is jurisdictional and bars suit. *Id*. Governmental immunity is waived only by clear and unambiguous language indicating the Legislature's intent to do so. *Hillman v. Nueces Cty.*, No. 17-0588, 2019 WL 1231341, at *4 (Tex. Mar. 15, 2019).

*Hamilton's Release of Age Discrimination Claims*

Among other arguments, Hamilton first asserts that because SISD agreed to settle classes of claims for which immunity had been waived by the Legislature, the District cannot thereafter claim immunity in this suit based on a breach of settlement agreement that itself addressed those statutory claims. In his affidavit, Hamilton averred that he had contemplated filing an age discrimination claim but negotiations with SISD intervened which successfully resulted in the execution of a separation agreement and release of claims. Hamilton points to terms included in the separation agreement establishing that he had released "all claims," "rights and obligations under the federal and state constitutions, laws or regulation," "the Texas Commission on Human

6

Rights Act," "Title VII," "The Americans with Disabilities Act," "or any other state or federal equal employment opportunity law," and "the Age Discrimination in Employment Act.[2]" Relying on *Texas A & M University-Kingsville v. Lawson*, and its progeny, Hamilton asserts that because SISD agreed to settle classes of claims from which it was not immune, it could not thereafter claim immunity from suit in an action alleging a breach of the settlement agreement. *See Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex. 2002) (plurality opinion); *City of Carrollton v. Singer*, 232 S.W.3d 790, 800 (Tex. App.—Fort Worth 2007, pet. denied); *Harris County Hous. Auth. v. Rankin*, 414 S.W.3d 198, 205 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

In *Lawson*, a former employee sued a state university alleging that the university had breached a settlement agreement it had entered with the employee to settle his wrongful termination lawsuit. *Lawson*, 87 S.W.3d at 518-19. Lawson was a clarinet instructor who brought a claim of a violation of the Whistleblower Act against the university after it terminated his employment. *Lawson*, 87 S.W.3d at 518. Lawson and the university later reached a settlement agreement in which one of the terms of their agreement obligated the university to confirm to potential employers that he had been employed with the university as an "assistant professor." *Id.* at 519. Lawson alleged, however, that the university told a potential employer that Lawson had been an "instructor," and further refused to elaborate on what was meant by that designation. *Id.*

After Lawson filed a lawsuit for breach of the settlement agreement, the university filed a

---

[2] Regarding Hamilton's release of any claims under the Age Discrimination in Employment Act (hereinafter, ADEA), we note that the Supreme Court of the United States has held that the ADEA's purported abrogation of the States' sovereign immunity has been held invalid. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000); *see also Univ. of Tex. at Dallas v. Matney*, 280 S.W.3d 882, 884 (Tex. App.—Dallas 2009, no pet.); *Texas A & M AgriLife Extension Services v. Garcia*, No. 10-18-00094-CV, 2018 WL 4354055, at * 2 (Tex. App.—Waco Sep. 12, 2018, no pet.) (mem. op., not designated for publication) (recognizing that employee's claims under the ADEA are barred by sovereign immunity in light of *Kimel*). Accordingly, we will proceed to analyze Hamilton's anticipated age-discrimination claim under TCHRA.

plea to the jurisdiction based on immunity. *Id*. After noting that the Legislature had expressly waived immunity from suit for violations of the Whistleblower Act, the Texas Supreme Court observed that Lawson had been entitled to sue the university for violating the statute prior to entering into the settlement agreement. *Id*. at 521. Explaining how the waiver of immunity extended from Lawson's whistleblower claim to his later breach of settlement claim, the Supreme Court stated, "when a governmental entity is *exposed to suit* because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id*. (emphasis added). The Court added, "[o]nce the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision." *Id*. at 522.

Following *Lawson's* analysis, several Texas courts faced with a question of whether immunity applied to a breach of contract claim have focused their inquiry on whether the governmental entity named in a breach of settlement agreement had been earlier exposed to suit at the time it entered into the negotiated agreement. For example, in *Harris Cty. Hous. Auth. v. Rankin*, 414 S.W.3d 198, 200 (Tex. App.—Houston [1st Dist.] 2013, pet. denied), our sister court in Houston addressed a situation where an employee alleged a breach of contract claim against a housing authority. The employee had entered into an employment contract to perform as the authority's chief executive officer. *Id*. By its terms, the contract provided that the housing authority could terminate the chief executive's employment without cause by choosing to pay him a full year's salary. *Id*. After the contract became a topic of interest at a board meeting, the executive and the housing authority negotiated a new contract that bought out the prior agreement for a lesser amount than a full year's salary. *Id*. Later, when the housing authority did not pay the

8

amount expected, the executive filed suit claiming that the housing authority had breached the newer contract. *Id.*

On appellate review, *Rankin* noted that "[t]he critical inquiry stemming from *Lawson* and its progeny … is not focused on whether a suit has been filed, but is focused, instead, on whether the governmental entity had waived its immunity at the time the subsequent agreement was reached." *Id.* at 204. Recognizing that waiver of immunity had been expressly established by the Legislature through Section 271.152 of the Local Government Code,[3] *Rankin* held that the immunity of the housing authority had likewise been waived on the executive's later breach of contract claim. *Id.* at 205.

Like in *Rankin*, the Fort Worth court of appeals reached a similar conclusion in *City of Carrollton v. Singer*, 232 S.W.3d 790, 792-93 (Tex. App.—Fort Worth 2007, pet. denied). The *Singer* case addressed a situation where the city entered into a settlement agreement of an eminent domain claim with landowners. *Id.* As property owners, the Singers conveyed to the city a portion of their property so that the city could build a roadway, and in turn, the city agreed it would provide certain improvements to the property. *Id.* When the Singers became dissatisfied with the city's performance they sued the city for breach of the settlement agreement. *Id.* at 793-94. The Fort Worth court of appeals held that the city's immunity had been waived on the Singers' claim of breach of agreement based on its conclusion that the type of claim settled by the agreement, namely, an eminent domain proceeding, qualified as a claim for which the city would not have

---

[3] Section 271.152 of the Local Government Code provides: "A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152.

9

retained its immunity. *Id*. at 800.

Recently, in *Hughes v. Tom Green County*, 573 S.W.3d 212, 221 (Tex. 2019), the Texas Supreme Court reiterated the rule of *Lawson* in a probate case involving an assignment agreement between a county government and heirs of a testator who had bequeathed property to the county and to a private university. The testator had left his home and all its contents, including his rare book and music collections to Tom Green County with a direction that it be used as a branch library. *Id*. at 214. He also provided that the county library board could sell the home and use the proceeds to buy new books and materials if that were a more beneficial use. *Id*. In addition to the home itself, however, the testator also devised the residue of his estate to the county so that funds may be available for paying off any indebtedness against his home, for upkeep, or for the purchase of new books. *Id*.

As for other bequests, the testator devised his interest in the oil, gas and other minerals of certain properties located in Reagan and Irion Counties to Southern Methodist University to establish an endowed chair in the English Department. *Id*. The proceeds generated from oil and gas production soon exceeded over $1.5 million becoming the highest level of funding for an English Department Chair at the university. *Id*. Given this high funding, the university filed an application with the probate court seeking authority to use excess funds for other purposes within the university's English Department. *Id*. Responding to the application, other interested parties intervened. First, the county alleged that the testator's intent to establish and fund a single endowed chair had been accomplished, and thus, the county was entitled to "all excess proceeds" under the will's residuary clause. *Id.* at 215. Second, heirs of the testator similarly alleged that the specific bequests to both the university and the county had been accomplished, and thus, title

to the proceeds reverted to the testator's heirs. *Id*.

While the proceeding remained pending, the county and testator's heirs agreed to join forces and entered into a Mutual Partial Assignment (MPA) agreement to present a unified defense against the university's request to lift restrictions on its bequest. *Id*. By their agreement, the county and heirs formally agreed to share equally in any recovery either of them obtained as a result of adjudicating their claims against the private university. *Id*. During a court-ordered mediation, the county and heirs collectively entered into a settlement agreement which provided that the private university would pay $1 million in exchange for a release of these adverse claims against the university. *Id*.

Later, after disagreements arose over the county's performance of the MPA agreement, one of the heirs sued the county alleging a breach of material terms of the agreement. *Id*. Responding, the county filed a plea to the jurisdiction asserting that governmental immunity barred the heir's suit alleging a breach of the MPA agreement. *Id*. at 216. The trial court granted the county's plea and the intermediate court affirmed the trial court's ruling. *Id*.

In reversing, the Texas Supreme Court reiterated the rule of *Lawson* stating that "a governmental entity cannot create immunity for itself by settling a claim for which it lacks immunity only to assert immunity from suit in a subsequent action to enforce the government's agreement." *Id*. at 221. By intervening in the probate proceeding, the County had invoked the jurisdiction of the probate court over all adverse claims to title including any claim asserted by the county government. *Id*. at 219 (citing *Reata Construction Co. v City of Dallas*, 197 S.W.3d 371, 377-378 (Tex. 2006) ("when a governmental entity asserts claims for affirmative relief in court, the entity does not have immunity from suit for opposing claims that are germane, connected, and

11

properly defensive to the entity's claims, to the extent that the claims of the private litigant offset those asserted by the governmental entity.")). Thus, *Hughes* recognized that the formal agreement between the heirs and the county had settled adverse claims over disputed property at a time when the county lacked immunity on those claims. *Id*. The Supreme Court concluded that the intermediate court of appeals had erred in rejecting *Lawson* based on its assumption that the county government had retained its immunity in the probate proceeding. *Id*.

*Analysis*

In this suit, Hamilton contends that his release of his statutory claim for age discrimination pursuant to the Texas Commission on Human Rights (TCHRA) met the standard set by *Lawson* and its progeny, and thus, SISD could not create immunity for itself by entering into a settlement agreement for which it lacked immunity only to assert immunity from suit in a later action to enforce material terms of the parties' settlement agreement. In Texas, the Legislature enacted the Texas Commission on Human Rights Act (TCHRA) as a comprehensive fair employment practices provision and remedial scheme modeled after Title VII of the federal Civil Rights Act of 1964 to provide a statutory framework for employment discrimination claims. *Prairie View A&M University v. Chatha*, 381 S.W.3d 500, 502-03 (Tex. 2012); *see* TEX. LAB. CODE ANN. §§ 21.001, 21.051, 21.101. Relevant here, the age-discrimination provisions of TCHRA prohibit an employer from discriminating against an individual over 40 years of age because of their age. TEX. LAB. CODE ANN. § 21.101. TCHRA defines "employer" to include "a county, municipality, state agency, or state instrumentality," and prohibits employers from engaging in discriminatory practices. TEX. LAB. CODE ANN. §§ 21.002(8)(D), 21.051. Among other entities, the Texas Supreme Court has concluded that TCHRA clearly and unambiguously waives immunity for suits

12

brought against school districts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008).

Here, SISD asserts that despite the express waiver of immunity established by TCHRA, it retained its immunity against Hamilton's breach of contract claim and asserts that *Lawson* and *Rankin* do not apply in this instance. Focusing on the circumstances existing when the parties entered into the separation agreement, SISD first argues that Hamilton had not yet filed a lawsuit against SISD at the time he entered into the separation agreement. Second, SISD argues that Hamilton had not initiated, much less exhausted, his administrative remedies required for him to bring a claim against SISD. Particularly, SISD argues that Hamilton had not initiated the appeal process afforded under the Texas Education Code to appeal the decision to terminate his employment. *See* TEX. EDUC. CODE ANN. § 21.207. The District also argues that Hamilton had not yet filed a charge of discrimination with the EEOC that would permit him to assert a discrimination claim against SISD. *See Texas Parks & Wildlife Dep't v. Dearing,* 150 S.W.3d 452, 458 (Tex. App.—Austin 2004, pet. denied) (before filing suit, a claimant must strictly satisfy the procedural requirements outlined in Chapter 21 of the Texas Labor Code). SISD relies on two cases from our sister courts of appeal in support of its arguments, *Donna Indep. Sch. Dist. v. Gracia*, 286 S.W.3d 392, 393 (Tex. App.—Corpus Christi 2008, no pet.) and *Tex. Dep't of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *1 (Tex. App.—Austin May 6, 2011, pet. denied) (mem. op., not designated for publication). Because we find these authorities distinguishable, however, we are not persuaded.

In *Donna Indep. Sch. Dist. v. Gracia*, a school district employee who worked as a teacher and football coach was suspended following a criminal investigation of allegations of hazing.

13

*Donna Indep. Sch. Dist.,* 286 S.W.3d at 393. The school later informed Gracia that his teaching contract for the following year would not be renewed. *Id*. In response, Gracia requested a hearing under the education code. *Id*. (citing TEX. EDUC. CODE ANN. § 21.253). Before the hearing took place, however, the school district and Gracia resolved their dispute and entered into a settlement agreement. *Id*. Gracia promised to tender a letter of resignation and the district in turn promised to provide a neutral recommendation to prospective employers who inquired about Gracia's employment history with the district. *Id*. After Gracia was arrested, he filed a suit against the district alleging a breach of contract claim. *Id*. Although the district responded with its assertion that Gracia's claim was barred by immunity, the trial court denied its plea. *Id*.

On appeal, the Corpus Christi court of appeals determined that the issue of immunity hinged on the substance of Gracia's underlying claim, and that *Lawson* provided "the prism through which [the court] should view how breach of contract claims implicate sovereign immunity." *Id*. at 394 (citing *Lawson*, 87 S.W.3d at 522). Unlike *Lawson's* whistleblower cause of action, however, the appellate court in *Donna Indep. Sch. Dist.* found that "Gracia did not have a statutorily recognized claim pending in the trial court when he entered into an agreement with the District." *Id*. at 395. In other words, the *Donna Indep. Sch. Dist.* case plainly involved a dispute over a teacher's employment contract but did not additionally involve any statutorily recognized discrimination claims as authorized by the Legislature. Moreover, *Donna Indep. Sch. Dist.* found that Gracia's contract dispute pertaining to his teaching contract had "no adjudicative value in [the] court system" given that the parties had settled that claim just as Gracia had begun the administrative process. *Id*.

Distinguishing from *Lawson*, *Donna Indep. Sch. Dist.* explained that "[t]he Texas Supreme

14

Court … has forestalled the waiver-by-conduct exception to sovereign immunity in situations where an administrative remedy is available." *Id*. (citing *Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002) ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies.")). Consequently, *Donna Indep. Sch. Dist.* expressly found that *Lawson* did not apply to the claim or circumstances presented. *Id*. Accordingly, *Donna Indep. Sch. Dist.* held in favor of the school district in finding that the teacher's breach-of-contract claim was barred by sovereign immunity. *Id*.

In *Tex. Dep't of Health v Neal*, an employee working for the Department of Health as a human resources specialist applied for a position that she felt would provide her with supervisory opportunities. *Tex. Dep't of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *1 (Tex. App.—Austin May 6, 2011, pet. denied) (mem. op., not designated for publication). After Neal later learned that a younger person was selected, she filed an internal grievance using an employee complaint form. *Id*. Although she checked the "Non-Discrimination" box on the form, her narrative portion made a reference to possible discriminatory practices during the interview and selection process. *Id*. The department later provided her with another form that advised her that she had to file a complaint with the Texas Commission on Human Rights, within 180 days, if her complaint involved a claim of discrimination. *Id*. Thereafter, Neal signed a settlement agreement which allowed her to rotate into a Specialist V position. *Id*., at *2. This release, however, did not mention discrimination. *Id*. Instead, it merely released the department from any claims or causes of action arising out of any of the facts made the basis of her complaint. *Id*. Months later, the

15

department terminated the position and returned Neal to her previous position. *Id*. Days later, Neal filed a charge of discrimination with the Texas Commission on Human Rights and the EEOC. *Id*. Eventually, Neal filed a lawsuit that not only included a cause of action for employment discrimination under Chapter 21 of the Texas Labor Code, but also included a cause of action for breach of the earlier settlement agreement. *Id*. Neal argued that the settlement agreement equitably tolled the deadline for pursuing her statutory claim of discrimination. *Id*. The trial court denied the department's plea to the jurisdiction. *Id*., at *2-3.

On appeal, the Austin court of appeals held that the employee's breach of contract claim was barred by sovereign immunity because it differed factually from *Lawson*. *Id*., at *5. Unlike *Lawson*, Neal signed a settlement agreement that did not mention discrimination and she had not satisfied the pre-requisite requirements of the Labor Code by filing a complaint with the Texas Workforce Commission within 180 days of the alleged discriminatory act. *Id*.; *see also* TEX. LAB. CODE ANN. § 21.202. *Neal* found that the claimant of *Lawson* had satisfied statutory prerequisites and initiated a valid lawsuit before the parties settled the discrimination claim. *Id*., at *4; *Lawson*, 87 S.W.3d at 519.

Despite SISD's argument, we are not persuaded by *Donna Indep. Sch. Dist.* or *Neal* given that these cases not only differ factually from the circumstances in this instance, but also because they are not controlling. Viewing the evidence favorable to Hamilton, as we must, Hamilton established that he had anticipated filing an age-discrimination claim prior to reaching a settlement agreement with SISD only days after he was informed of his involuntary separation of employment. Thus, at the time the parties signed the separation agreement and release of claims, deadlines had not yet passed for him to comply with jurisdictional prerequisites of certain statutory

16

claims. Based on the terms of the separation agreement itself, we can reasonably infer that SISD knew of its exposure to Hamilton's age discrimination claim as this claim, for example, was expressly included among others for which the district sought and obtained a release and discharge from Hamilton. By negotiating for a release of discrimination-related claims, SISD contractually precluded Hamilton from initiating and fulfilling his 180-day filing prerequisite. *See* TEX. LAB. CODE ANN. § 21.202 (claimant must file complaint with TWC or EEOC no later than 180th day after the date alleging an unlawful employment practice has occurred). Beyond merely resolving his separation of employment, the agreement that SISD entered provided that the parties had agreed that Hamilton would fully release and discharge SISD for all claims including those that could be brought under the Texas Commission on Human Rights Act.

In other words, like in *Lawson,* SISD had concerns about being exposed to statutorily recognized claims when Hamilton entered into the agreement with the school district. Following the controlling authority of *Lawson* and its progeny, we conclude that the District could not nullify the legislative waiver of immunity by entering into a separation agreement that included a release and discharge provision contractually barring Hamilton from initiating statutory claims including one for age discrimination. *See Lawson*, 87 S.W.3d at 521 ("when a governmental entity is *exposed to suit* because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued") (emphasis added); *Hughes*, 573 S.W.3d at 221 ("*Lawson* provides that a governmental entity cannot create immunity for itself by settling a claim for which it lacks immunity only to assert immunity from suit in a subsequent action to enforce the government's agreement."); *Travis County, Texas v. Rogers*, No. 03-14-00186-CV, 2015 WL 4718726, at *4 (Tex. App.—Austin July 29, 2015, no pet.) ("County is not immune from

17

[claimant's] suit for breach of the Settlement Agreement, which settled viable claims under the Whistleblower Act.").

Because the agreement in this instance reflects that SISD acknowledged its exposure to a class of claims on which immunity had been waived by the Legislature (i.e., an age-discrimination claim pursuant to TCHRA) at a time when those claims remained viable, SISD could not nullify the waiver of immunity by simply entering into a release and separation agreement that precluded Hamilton from timely pursing such claims then later asserting that governmental immunity applied to a claim that SISD had breached the separation agreement. *See Lawson*, 87 S.W.3d at 521; *Rankin*, 414 S.W.3d at 204-05; *Singer*, 232 S.W.3d at 800. We therefore hold that because a waiver of immunity was statutorily established on Hamilton's then-viable age-discrimination claim when he entered into the settlement agreement, Hamilton's later claim of breach of the separation agreement was not barred by governmental immunity. Accordingly, we overrule SISD's sole issue based on Hamilton's first argument and there is no need for us to reach his remaining arguments.

## CONCLUSION

We affirm the trial court's judgment.


GINA M. PALAFOX, Justice

July 17, 2019

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment

18